Clyde A. **PERKINS**, Plaintiff-Appellee,

v.

**STANDARD OIL COMPANY OF CALIFORNIA**, a corporation, Defendant-Appellant.

No. 71–1515.

United States Court of Appeals, Ninth Circuit.

Feb. 12, 1973.

Certiorari Denied June 11, 1973. See 93 S.Ct. 2778.

Francis R. Kirkham, Richard J. MacLaury, Thomas J. Klitgaard, of Pillsbury, Madison & Sutro, San Francisco, Cal., Wayne Hilliard, of McColloch, Dezendorf, Spears & Lubersky, Portland, Ore., for defendant-appellant.

Bruce Hall (argued), Ernest Bonyhadi, of Rives, Bonyhadi, Hall & Epstein, Portland, Ore., George R. Kucik (argued), Earl W. Kintner, James P. Mercurio, of Arent, Fox, Kintner, Plotkin & Kahn, Washington, D. C., Roger Tilbury, of Tilbury & Kane, Portland, Ore., for plaintiff-appellee.

Before HAMLEY, KOELSCH, and DUNIWAY, Circuit Judges.

KOELSCH, Circuit Judge.

This appeal presents several questions concerning the District Court's allowance of attorneys' fees in a private antitrust action. We modify the District Court's judgment and affirm.

Perkins, the appellee herein, obtained a jury verdict against appellant Standard Oil Company of California for damages in the sum of $336,404.67 in a suit alleging violations of section 2 of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13. Pursuant to section 4 of the Clayton Act, 15 U.S.C. § 15, the trial court trebled the

award to $1,009,213.71, and entered judgment for that amount. In addition, as authorized by section 4, the court awarded Perkins the usual taxable costs and allowed him $289,000 for the services of his attorneys in prosecuting the suit. On Standard's appeal, this court reversed the District Court's judgment on the merits and remanded the cause for a new trial. Standard Oil Co. of California v. Perkins, 396 F.2d 809 (9th Cir. 1968). Perkins successfully petitioned for certiorari to the Supreme Court, which reversed our judgment and ordered the trial court's verdict and judgment reinstated. Perkins v. Standard Oil Co. of California, 395 U.S. 642, 89 S.Ct. 1871, 23 L.Ed.2d 599 (1969).

In his certiorari petition, Perkins had not mentioned attorneys' fees for services rendered either in this court or in the Supreme Court, and the Court's mandate was accordingly silent on the subject. Standard, following the Court's denial of its petition for rehearing, 396 U.S. 871, 90 S.Ct. 36, 24 L.Ed.2d 126, paid Perkins the amount of the reinstated judgment. Perkins then filed an application in the District Court requesting that court to award him attorneys' fees for services rendered him on the appeal to this court and in the Supreme Court proceedings. District Judge Belloni denied the application.[1] Perkins then filed a notice of appeal of that decision to this court; at the same time, he also filed two separate petitions directly in this court, one seeking fees in the previous appeal to this court, and the other seeking fees in the Supreme Court proceedings. We granted the petition for fees in the previous appeal to this court, allowing Perkins $2,500. However, we deemed ourselves foreclosed from making an award for services in the Supreme Court because of the silence of the Court's mandate on the matter of fees; accordingly, we dismissed

the pending appeal from the District Court and denied Perkins' original application in this court for the same relief.

Perkins then filed two petitions for certiorari, one to review our dismissal of his appeal, the other to review our denial of his original application.[2] Both petitions were granted and, in a brief per curiam opinion, the Supreme Court held that section 4 does authorize the award of counsel fees for appellate services, and that the Court's ". . . failure to make explicit mention in [its earlier] mandate of attorneys' fees simply left the matter open for consideration by the District Court, to which the mandate was directed." Perkins v. Standard Oil Co. of California, 399 U.S. 222, 223, 90 S.Ct. 1989, 1990, 26 L.Ed.2d 534 (1970).

On remand, Judge Belloni, after conducting a hearing on the matter, awarded Perkins the sum of $250,000 for attorneys' fees in the first Supreme Court proceedings, in which the Court had ordered reinstatement of the trial court's judgment. He also allowed $25,000 for counsel fees arising out of the second Supreme Court proceedings, in which the Court reversed the District Court's disallowance of attorneys' fees on appeal. And, finally, Judge Belloni allowed $14,180 in fees for services of Perkins' attorneys in the attorney fee-application proceedings in the District Court. Perkins v. Standard Oil Co. of California, 322 F.Supp. 375 (D.Or.1971).

Standard objects to the allowance of $250,000 for the first Supreme Court proceedings as excessive and an abuse of discretion. In addition, Standard objects to the remaining allowances on two grounds: first, that section 4 does not create a right to recover attorneys' fees for services in a proceeding, ancillary to the damage suit, to recover additional attorneys' fees for services on appeal of the main action; and, second, that if

---

1. District Judge William G. East was the trial judge in the original proceedings.

2. Our award of $2,500 for services of Perkins' counsel in the first appeal to this court was not challenged in these petitions for certiorari.

such awards are authorized, the awards made in this case were excessive.

## 1. The Services in the Main Case.

■ This is not the usual situation, where an appellate court is faced with an attack on the trial court's allowance of attorneys' fees for services at trial. Here we must review the District Court's appraisal of the worth of services rendered in another court, the Supreme Court. Accordingly, we believe that the District Court's determination, at least with respect to the necessity for and the quality and value of the work, need not be accorded the deference that would be given to decisions which involved matters within the "first-hand" knowledge of the District Court and which come within its special competence. Moreover, as indicated above, the appraisal involved in this branch of the appeal was made not by the original trial judge, but rather by another District Judge, who necessarily lacked the trial judge's intimate knowledge of the proceedings, the issues in the original suit, and the intricacies in the presentation of these issues on the appeal. The latter fact alone provides a basis for exercising "somewhat more latitude in determining whether there has been · an abuse of discretion than would be true in the usual case . . .," Twentieth Century Fox Film Corp. v. Goldwyn, 328 F.2d 190, 221 (9th Cir. 1964), cert. denied, 379 U.S. 880, 85 S.Ct. 143, 13 L. Ed.2d 87. In combination, the two factors discussed above dictate that our review of the District Court's allowances be much broader than it might be were we reviewing allowances made for services in the District Court itself.[3]

There can be no doubt that plaintiff's counsel devoted a considerable amount of time to the certiorari proceedings and that the services were of substantial value. Time spent by counsel and the success of their efforts are among the nine factors this court noted in calculating the award in Twentieth Century Fox Film Corp. v. Goldwyn, supra.[4] However, Goldwyn concerned fees for trial services, and some of the factors in Goldwyn are of doubtful or no relevance here.[5] Moreover, recognition must be given to essential differences in the nature of the services performed by appellate counsel, as compared to those rendered by trial counsel. Anti-trust litigation is most complex at the initial stages. It is then that counsel must ferret out the evidence, settle upon legal theories appropriate to recovery, and then make a trial record accordingly. Appellate services, on the other hand, are of a derivative nature, performed within the frame of the case as developed at trial. We do not suggest that appellate litigation may not be complex. The record in the first Perkins' appeal was voluminous, and numerous factual matters were asserted in the certiorari proceedings, all requiring extensive record research by Perkins' counsel in their preparation of the petition and brief in the Supreme Court. And the legal theories were both novel and complex, extending the coverage of section 2 of the Clayton Act. With respect to the

3. See Part 2 of this opinion, in which the question of fees awarded for services in the District Court is considered.

4. The factors noted in Goldwyn were: (1) whether plaintiff's counsel had the benefit of a prior judgment or decree in a case brought by the Government; (2) the standing of counsel at the bar; (3) time and labor spent; (4) magnitude and complexity of the litigation; (5) responsibility undertaken; (6) the amount recovered; (7) the knowledge the court has of the conferences, arguments that were presented and of work shown by the record to have been done by attorneys for the plaintiff prior to trial; (8) what it would be reasonable for counsel to charge a victorious plaintiff; and (9) what contribution shall be made by the defendant toward the fees of plaintiff's counsel. 328 F.2d at 221.

5. As disclosed earlier in this opinion, Perkins was awarded $289,000 in fees for his attorneys' services at trial. That allowance has been paid, and is not in any way involved in this appeal.

trial phase of the same case, however, the presentation in the Supreme Court proceedings was more of an elaboration, or refinement, of those theories propounded in the trial court and on the appeal to this court.

For these reasons, we believe that in assessing "a reasonable attorney's fees" for appellate services, a court must keep in mind that the appeal is not a separate lawsuit, but rather a continuation of a lawsuit which has progressed considerably by the time counsel commences work on the appeal. Accordingly, the amount allowed for attorneys' services on appeal should generally be less than that awarded for services at the trial of the same case.

We are mindful that the ". . . apparent purpose behind this part of section 4 [is] to award the successful plaintiff a reasonable attorney's fee so that his treble damage recovery would not be unduly diminished by the payment to his attorneys." Farmington Dowel Products Co. v. Forster Mfg. Co., 421 F.2d 61, 88 (1st Cir. 1970). The clear import of the Supreme Court's second *Perkins*' decision [399 U.S. 222, 90 S.Ct. 1989, 26 L.Ed.2d 534] is that the additional fee allowance for appellate services serves to further encourage private antitrust enforcement by preventing undue shrinkage of damage awards by the fees of counsel retained to protect the awards in the appellate courts. However, this does not mean that the allowance for appellate services need fully reimburse the plaintiff for his counsel fees on appeal. "[T]he imposition of this penalty was [not] meant to turn in any way on the nature or amount of the plaintiff's fee arrangement, a fortuity wholly unrelated to defendant's illegal conduct." Farmington Dowel Products Co. v. Forster Mfg. Co., *supra*, 421 F.2d at 90. The ultimate question in every inquiry into the fee award is what contribution the defendant should make toward the fees of plaintiff's counsel. Twentieth Century Fox Film Corp. v. Goldwyn, *supra*, 328 F.2d at 221.

The District Court found that Perkins' attorneys spent 2914.05 hours in the first Supreme Court proceeding. Approximately 900 of these hours were contributed by his local counsel in Portland, Oregon, who had represented him in the trial and in the appeal to this court. The remaining time, approximately 2,000 hours, was contributed by a Washington, D. C. firm retained to handle the matter in the Supreme Court. The Washington firm managed the Supreme Court litigation, wrote the briefs, and argued before the Court; the Portland attorneys provided assistance in the preparation of the record and the petition for certiorari. The District Court found that this arrangement did not result in any unnecessary duplication of effort. 322 F.Supp. at 376.

Even if we accept the District Court's findings,[6] we note that the court's allowance of $250,000 reflects an overall hourly rate in excess of $85 for the services of all attorneys who participated in the appeal. This includes the time of all associates, as well as partners, and the time of the Portland attorneys, whose role in the Supreme Court proceedings was largely in support of the Washington attorneys, who had primary responsibility in the matter. Over 90 percent of the time spent by the Washington firm was spent by associates (1866 v. 131 hours for partners' time), and over 30 percent of the total lawyer hours expended in the case were by the Portland attorneys. While we agree with the District Court that the novelty and complexity of the case and the quality and success of the attorneys' work justify more than a minimum fee

---

6. We entertain serious doubts that new counsel can be brought into a case at the appellate stage without some duplication of effort, for which the defendant should not be held chargeable.

award, we are of the opinion that the court's award is excessive and should be reduced to take into account the percentages of the total time contributed, respectively, by partners and associates of the Washington firm, primary counsel in the proceedings, and by the Portland attorneys, whose role was secondary to that of the Washington lawyers. In our view, an allowance of attorneys' fees at an overall rate of $40 per hour more properly reflects consideration of the relative contributions of the three groups of attorneys and the nature and difficulty of the case.[7] Accordingly, the allowance for attorneys' fees in the first Supreme Court proceedings is reduced to the sum of $116,562.

## 2. Fees in the Ancillary Proceedings.

A primary purpose of section 4 of the Clayton Act is to encourage private persons to undertake the enforcement of the antitrust laws in order to more effectively carry out Congressional policy against illegal monopolies and restraints of trade. Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 139, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968); Karseal Corp. v. Richfield Oil Corp., 221 F.2d 358 (9th Cir. 1955). The provision in section 4 insuring a successful plaintiff a reasonable attorney's fee is consistent with this purpose in that it insulates, at least to some extent, the plaintiff's damage recovery from the costs incurred in obtaining the recovery, and places this cost burden on the defendant whose violation of the antitrust laws is established. The obligation for attorneys' fees, in addition to trebled damages, acts as a further deterrent to violations of the antitrust laws and, to that end, we think it extends not only to the trial stage and to the "appellate stages of a successfully prosecuted private antitrust action," [Perkins v. Standard Oil Co. of California, 399 U.S. 222, 223, 90 S.Ct. 1989, 26 L.Ed.2d 534 (1970)], but also to ancillary proceedings for such fees.

◼ (A) We are of the opinion that the $25,000 allowed by the District Court to Perkins for his attorneys' services in the second Supreme Court proceeding is excessive.

The issue which generated the latter certiorari proceedings was one which Perkins might have urged in the Supreme Court when the main case was before the court. Considerable time and effort might thus have been saved, and the question laid to rest at that time. Be that as it may, we think the allowance made by the District Court was ex-

7. The $40 hourly "overall" rate is an average of three hourly rates, one for each group of attorneys, weighted by their contribution to the total attorney hours. The partners in the Washington firm contributed 131 hours, approximately 5 percent of the total time; the Washington associates contributed 1,866 hours, approximately 65 percent of the total; and the Portland attorneys contributed the remaining 30 percent of the hours. Considering the secondary role of the Portland attorneys in the Supreme Court proceedings, we think their time should be assessed at a minimum rate of $30 per hour. The time of the Washington firm's attorneys, however, can properly be assessed at augmented rates, to take into account the difficulty, magnitude and success factors discussed above, and the firm's primary responsibility for the case. Working from the base rates of $50 and $30 for, respectively, partners and associates (these figures were used by the District Court in assessing fees for services of an ordinary nature in that court), an allowance of $80 for partners' time and $40 for associates' time is a reasonable hourly charge to be assessed against the defendant. These three rates, weighted by the percentage of total time contributed by each group of attorneys, provide an average rate of approximately $40 for all attorneys participating in the Supreme Court proceedings.

This rate compares with the effective hourly rate allowed by the original trial judge for fees in the trial proceedings. The total fee allowance there amounted to $289,000, and the time spent by counsel was approximately 6,300 hours, for an average effective hourly rate of approximately $46.

cessive, particularly in view of the fact that the second certiorari proceeding involved only the issue of Perkins' right to recover fees on appeal, and the fact that a majority of the 292 hours spent on the second appeal was contributed by associates. Again we are satisfied that an allowance at an overall rate of $40 per hour more nearly reflects a reasonable balancing of the factors discussed earlier, in setting the "contribution [to] be made by the defendant toward the fees of plaintiff's counsel," [Twentieth Century Fox Film Corp. v. Goldwyn, *supra*, 328 F.2d at 221] than does the effective rate of $85 reflected in the District Court's award.

Accordingly, the allowance for fees in the second Supreme Court proceeding is reduced from $25,000 to the sum of $11,680.

(B) With respect to the allowance for services in the District Court proceedings, we cannot say that the District Judge abused his discretion. As noted earlier, considerably more weight must be given to a determination made by the judge directly involved in a proceeding than to a determination by a reviewing judge or court based upon a "cold" record. The sum in question reflected approximately 338 hours, spent for the most part in taking depositions, collecting affidavits, presenting arguments, and participating in the discussion of factual issues with the judge in two hearings. The judge applied separate rates for partners and associates, setting each rate after considering the experience of the participating attorneys and the quality of their work. The award of $14,180 is thus affirmed.

(C) Finally, we allow Perkins $1500, that being a reasonable sum, for the services of his attorneys on this appeal.

The judgment is modified in accordance with the foregoing opinion and, as modified, is affirmed. Neither party shall recover costs.