GRUMMAN CORPORATION, Plaintiff,

v.

The LTV CORPORATION, Jones & Laughlin Industries, Inc., CKH Corporation and Vought Corporation, Defendants.

No. CV 81–3156.

United States District Court, E. D. New York.

March 18, 1982.

See also D.C., 527 F.Supp. 86, 2 Cir., 665 F.2d 10.

Cahill, Gordon & Reindel, New York City, for plaintiff; Raymond L. Falls, Jr., David

**1386**

R. Hyde, P. Kevin Castel, Peter Leight, New York City, of counsel.

Davis, Polk & Wardwell, New York City, for defendants; Henry L. King, Arthur F. Golden, William L. Rosoff, Robert S. Harrison, New York City, of counsel.

*Memorandum of Decision and Order*

MISHLER, District Judge.

The Grumman Corporation ("Grumman") filed a motion on September 28, 1981[1] under Section 16 of the Clayton Act, 15 U.S.C. § 26 (1981) ("Section 16"), to preliminarily enjoin The LTV Corporation and the affiliated defendants (hereinafter collectively referred to as "LTV") from proceeding with its September 24 tender offer to acquire Grumman. Grumman obtained the injunctive relief it had sought and thereafter successfully defended a vigorous challenge to that relief in the Court of Appeals.[2] Grumman now moves for, *inter alia*, "the cost of suit including a reasonable attorney's fee" also pursuant to Section 16.

Grumman's motion for a preliminary injunction was made returnable on October 6. The parties conducted discovery on an expedited basis prior to the hearing conducted by this court on October 6 and 7. One week later this court signed an order preliminarily enjoining LTV from proceeding in its efforts to acquire control of Grumman based in significant part upon Grumman's contention and proof that the proposed plan would violate § 7 of the Clayton Act, 15 U.S.C. § 18 (1976). Based upon extensive depositions, affidavits and exhibits offered by both sides in connection with the two-day hearing, we found that Grumman had proved a likelihood of success on the merits with respect to antitrust violations in three distinct markets. *Grumman Corporation v. The LTV Corporation*, 527 F.Supp. 86 (E.D. N.Y.1981). Thereafter, the Court of Appeals heard the appeal from our injunction on an expedited basis and affirmed our findings with respect to each market. *Grumman Corporation v. The LTV Corpora-*

*tion*, 665 F.2d 10 (2d Cir. 1981). Specifically, the Court found that a preliminary injunction was warranted since "Grumman [had] established *at least* the requisite probability of success in proving" that the successful consummation of LTV's tender offer might tend to substantially lessen competition in the market for carrier-based aircraft. *Id.* at 13 (emphasis added).

In opposition to the instant motion for costs and attorney's fees, LTV contends that Grumman's application must be rejected in total. The Section 16 attorney's fee provision is inapposite, LTV claims, because Grumman's antitrust suit was neither the "but for" cause of LTV's abandonment of the September 24 tender offer nor did Grumman obtain a final judgment on the merits.

The resolution of the instant motion requires our construction of the phrase "substantially prevails" in the context of the Section 16 attorney's fee provision:

> In any action under [Section 16] in which the plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable attorney's fee, to such plaintiff.

Having carefully read the statutory language in light of both the legislative history of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, P.L. 94–435,[3] and the provision for attorney's fees found in Section 4 of the Clayton Act, 15 U.S.C. § 15 ("Section 4") (permitting a damages suit for persons injured by antitrust violations), we find that Grumman is entitled to the "cost of suit" as well as "a reasonable attorney's fee." *See Harnischfeger Corp. v. Paccar, Inc.*, 503 F.Supp. 102 (E.D.Wisc.1980) ("Harnischfeger"); *F & M Schaefer Corp. v. C. Schmidt & Sons, Inc.*, 476 F.Supp. 203 (S.D. N.Y.1979) ("Schaefer").

### I. Discussion

#### A. Attorney's Fees

■ Grumman failed to obtain a decision on the merits in winning preliminary relief.

---

1. Unless otherwise specified, all dates identified are for 1981.

2. See LTV's Brief and Reply Brief filed with the Court of Appeals for the Second Circuit.

3. The Hart-Scott-Rodino Antitrust Improvements Act of 1976, P.L. 94–435, amended Section 16 incorporating the existing provision for costs and attorneys' fees.

Nevertheless, we believe that Grumman "substantially prevailed" within the meaning of Section 16 since (1) it is beyond dispute that its Section 16 action against LTV was a substantial factor in defeating the takeover attempt, and (2) a decision following a trial on the merits is not a condition precedent to a Section 16 attorney's fee award since the phrase "substantially prevails" contemplates and is sensibly construed to accommodate something short of a final judgment on the merits.

The starting point in our analysis is, of course, the statutory language. The dictionary meaning of the phrase in question suggests that a plaintiff which is victorious "in substance or in the main" is a prevailing party for purposes of Section 16. *See Webster's New Collegiate Dictionary* (2d ed. 1959). Standing by itself, this language is hardly illuminating. With respect to the constructions urged by the parties, the phrase is reasonably subject to differing interpretations. Congress having failed to define "substantially prevailed," we are left to the task of discerning its intent. *See e.g., Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917).

### 1. *No Requirement of a Final Judgment*

The courts which have examined the Section 16 attorney's fees provision have considered the interpretation of similar language used by Congress in different statutes. Under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988 ("Section 1988"), which provides that "the court, in its discretion, may allow the prevailing party a reasonable attorney's fee . . .", " 'parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief.' " *Mahr v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980), *quoting,* S.Rep.No.94–1011, p. 5, [1976] U.S.Code Cong. & Admin. News, pp. 5908, 5912. LTV argues that reliance on cases interpreting Section 1988 of the Civil Rights Act are inapposite since the legislative history of the amendment

expressly provided for attorney's fees even in the absence of formal and final relief. Its position essentially bids that we draw a negative inference from the Congressional silence in the legislative history underlying the amendment to Section 16. We attach little significance to Congressional silence in view of Congress' busy legislative schedule. *Cf.* Sands, *Sutherland Statutory Construction,* § 49.10 n.2 (4th ed. 1973). Rather, we believe it is more appropriate to presume that Congress intended identical language found within the Section 16 and Section 1988 attorney's fees provisions, which were enacted by the same Congress, would be identically construed. That presumption of course must be qualified in the instant case because the language utilized in the two statutes, although similar, is not identical.

By modifying the word "prevails" with the word "substantially," Congress appears to have expressed an intent to reward plaintiffs who "vindicate rights" through thwarting "threatened loss or damage by a violation of the antitrust laws" either through obtaining a final judgment or something which is its functional equivalent. This conclusion is corroborated by the negative inference which we draw from an examination of a host of statutes where Congress has expressly imposed the requirement of a final judgment as a condition precedent for plaintiff's recovery of attorney's fees. *See, e.g.,* Commodity Futures Trading Commission Act of 1974 § 106, 7 U.S.C. § 18(f) (finally prevails) (fees are mandatory); Packers and Stockyards Act § 309, 7 U.S.C. § 210(f) (finally prevails) (fees are mandatory); Perishable Agricultural Commodities Act § 7, 7 U.S.C. § 499g(b) (finally prevails) (fees are mandatory); Marine Protection, Research, and Sanctuaries Act of 1972 § 105, 33 U.S.C. § 1415(g)(4) (final order) (fees are within the court's discretion); Deepwater Port Act of 1974 § 16(d), 33 U.S.C. § 1515(d) (final order) (fees are within court's discretion); Safe Drinking Water Act § 1449(d), 42 U.S.C. § 300j–8(d) (final order) (fees are within court's discretion); Railway Labor Act § 3, 45 U.S.C. § 153(p) (finally prevail) (fees are mandatory); Communications Act

of 1934 § 407, 47 U.S.C. § 407 (finally prevail) (fees are mandatory). That many of these carefully drafted statutes, a number of which were enacted within a few years of the Section 16 provision for attorney's fees, incorporated an explicit requirement for a final judgment or order is strong evidence that Congress' failure to explicitly provide for a final judgment was not inadvertent.

We are aware of only one other statute which provides for attorney's fees to a plaintiff who has "substantially prevailed." Section 552(a)(4)(E) of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E). The Second Circuit held that such language did not require a final judgment as a prerequisite to an award of attorney's fees. *Vermont Low Income Advocacy Council, Inc. v. Usery*, 546 F.2d 509, 513 (2d Cir. 1976). However, the award of attorney's fees under FOIA rests within the discretion of the court. In contrast, a Section 16 fee award is mandatory following a determination that a plaintiff has substantially prevailed. LTV argues that Congress could not have intended that a plaintiff recover attorney's fees absent a final adjudication of the merits where the award is mandatory. To the contrary, considering the frequency with which "antitrust injunctions have been routinely denied by the courts in this Circuit and elsewhere, in private litigation and Government proceedings as well" and given the extreme infrequency of instances wherein antitrust grounded preliminary injunctions have withstood challenge in the Court of Appeals, LTV

Memorandum on the Preliminary Injunction at 2, it is hard to believe that Congress intended to deny attorney's fees to plaintiffs who succeed in obtaining the " 'extraordinary and drastic remedy' " [4] of a preliminary injunction. Moreover, LTV's argument lacks persuasive force in the instant case since our finding that Grumman had shown a likelihood of success on its antitrust claims has been affirmed.[5] *See F & M Schaefer Corp.*, 476 F.Supp. at 206–07.

In contrast to some of the other statutes which we have examined in our efforts to discern Congressional intent, LTV states that Section 4 of the Clayton Act, 15 U.S.C. § 15 ("Section 4"), is far more relevant since it is the most closely related statutory provision. We quite agree. Section 4 permits a person injured by a violation of the antitrust laws to recover in a damages action "threefold the damages by him sustained, and the cost of suit, including reasonable attorney's fees." Fees under Section 4 are allowed only if there is a final judgment on the merits.[6]

The language of Section 4 is barren of the words "prevails" or "substantially prevails." Having noted the different categories of "prevailing" parties for which Congress has provided in various attorneys' fee provisions, it is instructive to note the careful distinction made in the legislative history between "a substantially prevailing plaintiff in [Section 16] equity actions" and a "prevailing plaintiff in [Section 4] damage actions." S.Rep.No.97–803, 94th Cong., 2d Sess. 37 (1976).[7] We conclude that Con-

---

4. *Buffalo Forge Co. v. Ampco-Pittsburgh Corp.*, 638 F.2d 568, 569 (2d Cir. 1981).

5. LTV's brief states that it continues to believe that it would ultimately succeed in a trial on the merits. This conclusory allegation is supported by reference to changed circumstances with respect to antitrust problems connected with but one of three relevant markets. Without addressing the irrelevancy of changed circumstances which can of course provide a basis for modifying even a permanent injunction, LTV fails to proffer any factors which might provide a basis for a different conclusion with respect to the nacelles market or the market for subcontracting major airframe assemblies.

6. *See, e.g., City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 468–69 (2d Cir. 1974) ("Section 4 of the Clayton Act ... does not authorize award of attorneys' fees to a plaintiff who does not recover a judgment or who settles his claim with the defendant").

7. Senate Report No. 97–803 describes those entitled to attorneys' fees under Sections 4 and 16 respectively and distinguishes between "a substantially prevailing plaintiff in equity actions [Section 16]" and "prevailing plaintiffs in damage actions [Section 4]." The different standards are most probably attributed to the greater "need for awarding attorneys' fees in § 16 injunction cases ... than the need in § 4

gress intended to establish different standards for recovering attorney's fees under Section 16 and under the previously existing fee provision contained in Section 4. "Had Congress intended to establish the same standard for recovering attorneys' fees under the two sections, it could have used the same language or specifically stated in Section 16 that no attorney's fees would be allowed unless a party obtained permanent relief." *Harnischfeger*, 503 F.Supp. at 105.

Finally, LTV argues that the construction of Section 16 urged by Grumman contravenes the policy of the statute. The impetus for the Section 16 attorney's fee provision was the Supreme Court's decision in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), in which the Court held that, with a few narrow exceptions, federal courts had no power to award attorneys' fees to a successful party, absent specific statutory authority. *See* H.R.Rep.No.94–499, 94th Cong., 2d Sess., *reprinted in*, [1976] U.S.Code Cong. & Ad.News 2572, 2589. The legislative history makes clear Congress' desire to provide an incentive to private parties who would otherwise be "unable to afford or unwilling to bring antitrust injunction cases" to assume the role of "'private attorneys general'" to help enforce the antitrust laws. *Id.*

LTV argues that attorney's fees are not recoverable in every instance where target company management fights off a tender offer since they do not need additional incentive to enforce the antitrust laws. In essence, we are asked to transform the

plain meaning of the statute which unqualifiedly permits any corporation to sue under Section 16 and affords all plaintiffs who "substantially prevail" the privilege of recovering attorney's fees. Since, as a general proposition, we fail to find that an award of attorney's fees to target companies in the aftermath of a takeover battle would do violence to the legislative intent underlying Section 16, we refuse to delimit the class of corporations eligible to recover attorney's fees.[8] Moreover, we can conceive of instances where management of a company less well endowed than Grumman might be induced to fight off a tender offer because of the prospects of recovering the ordinarily prohibitive costs and attorney's fees associated with such corporate battles.

LTV's contention that Grumman is not entitled to fees because it needed no such incentive is irrelevant to the question of whether Grumman has substantially prevailed. Even if Grumman's true concerns were "more 'private' than attorney general," it is not precluded from seeking an award for attorneys' fees. *Cf. Grumman Corp. v. LTV Corp.*, 656 F.2d at 11. Grumman has shown "a deserving case" on the merits of its antitrust claim and therefore should not have to bear the "high price of obtaining judicial enforcement of the law and of the important national policies the antitrust laws reflect" as long as it otherwise establishes that it has substantially prevailed.[9] *See* [1976] U.S.Code Cong. & Ad.News, *supra*, 2589.

### 2. *The Standard Applied*

As in *Schaefer* and *Harnischfeger* where the district courts respectively found

---

treble damage cases." [1976] U.S.Code Cong. & Admin.News, *supra*, 2589.

**8.** A literal reading of the statute clearly permits the recovery of attorney's fees to *all* substantially prevailing plaintiffs. To limit the class of plaintiffs described in the statute, we would first have to find that a literal reading of statutory language was *clearly* inconsistent with the underlying legislative intent. *See e.g., United States v. Oates*, 560 F.2d 45, 75–76 (2d Cir. 1977) ("despite the existence of literal language that might dictate a contrary result, a court should interpret a statute in such a way as to effectuate clear legislative intent."). Any other

result would be tantamount to judicial legislation.

**9.** LTV argues that to permit attorneys' fees to a target company which has succeeded in fighting off an unwanted tender offer was not intended by Congress since it would contradict the congressional policy of even-handed neutrality in contests for corporate control. Since the award of attorneys' fees necessarily follows the battle for corporate control, we fail to see how an award of attorneys' fees tips the scales in any respect in favor of incumbent management.

that the plaintiffs had "substantially prevailed" within the meaning of Section 16, here too, plaintiff successfully obtained preliminary injunctive relief, successfully defended an appeal, and defendant abandoned its attempted anticompetitive acquisition following the affirmance of the injunction. In each case, the standard applied in determining whether a party "substantially prevailed" incorporated concepts of causation and benefit conferred to the public:

> The appropriate benchmarks in determining [whether a party substantially] prevailed are a) the situation immediately prior to the commencement of suit, and b) the situation today, and the role, if any, played by the litigation in effecting any changes between the two.

*Schaefer,* 476 F.Supp. at 206 (footnote omitted). Under this standard, Grumman has substantially prevailed since we find that its swift action was a substantial factor in preventing the LTV takeover which would have violated the antitrust laws.

Immediately following the Court of Appeals affirmance of our preliminary injunction order, LTV abandoned its attempted anticompetitive takeover. This was a direct consequence of the Second Circuit's decision. *See* Falls Affidavit Ex.A (LTV press release of Nov. 16, 1981); LTV Second Circuit Reply Brief 23 (the preliminary injunction "spelled the doom" of its tender offer). It is clear that LTV was not dissuaded from proceeding with its tender offer, as it now claims, due to the Grumman pension fund purchases on October 12 and 13. Even though our preliminary injunction followed the pension fund transactions, LTV vigorously pursued an expedited appeal from our order. Its apparent position—that it had pursued an expedited appeal without an intention to pursue the tender offer even if our injunction order were reversed—is, to say the least, incredulous.

We will not tarry further in discussing LTV's other equally unavailing contentions in connection with its claim that Grumman failed to substantially prevail. We find that the prosecution of this action by Grumman was necessary and had a substantial causative effect in preventing LTV from effecting a takeover in violation of Section 7 of the Clayton Act.[10] Accordingly, Grumman is entitled to reasonable attorneys' fees which are attributable to Grumman's Clayton Act claim.

Grumman shall also be entitled to recover attorneys' fees attributable to lawyers' time incurred in preparing the instant fee application. *Cf., e.g., Gagne v. Maher,* 594 F.2d 336, 343–44 (2d Cir. 1979), *aff'd,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Pitchford Scientific Instruments Corp. v. Pepi, Inc.,* 440 F.Supp. 1175, 1179 (W.D.Pa. 1977), *aff'd without opinion,* 582 F.2d 1275 (3d Cir. 1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 242 (1979); *Perkins v. Standard Oil Co.,* 474 F.2d 549, 554 (9th Cir.), *cert. denied,* 412 U.S. 940, 93 S.Ct. 2778, 37 L.Ed.2d 400 (1973).

### B. Cost of Suit

As a substantially prevailing plaintiff, Grumman is also entitled to an award for the "cost of suit." However, such costs do not include "out-of-pocket" disbursements. *Cf. Straus v. Talking Machine Co.,* 297 F.2d 791 (2d Cir. 1924); *accord, Trans World Airlines, Inc. v. Hughes,* 449 F.2d 51, 81 (2d Cir. 1971), *rev'd on other grounds,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973); *Berkey Photo Inc. v. Eastman Kodak Co.,* 603 F.2d 263, 309 n.75 (2d Cir.

---

**10.** On Tuesday, October 27, 1981, the Federal Trade Commission (the "FTC") announced its intention to bring action against LTV on the same antitrust ground asserted by Grumman. Although the FTC thereby demonstrated its interest and desire to protect the public interest in this action, its late arrival at the courthouse was not a satisfactory substitute for the timely, expeditious and expert action taken by Grumman in the context of this litigation. Such action was necessary to avoid serious disruption to Grumman's business. *See Grumman Corp. v. LTV Corp.,* 527 F.Supp. at 105. Also, preliminary relief obtained by Grumman obviated the need for the FTC to pursue divestiture, a remedy which doubtfully could have restored Grumman to its original position. *See Grumman Corp. v. LTV Corp.,* 665 F.2d at 16 ("threat to the public interest from the loss of competition is serious and not likely to be undone by divestiture in the event the acquisition is found to be unlawful ...").

1979), *cert. denied,* 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980). The only costs recoverable by Grumman are those normally allowable under 28 U.S.C. § 1920 and Rule 54(d) of the Federal Rules of Civil Procedure.

### C. *Hearing on the Costs of Suit and Attorneys' Fees*

LTV opposes the instant motion for attorneys' fees and costs because it believes that Grumman's showing with respect to these expenses is inadequate. LTV is hereby granted leave to pursue discovery in connection with Grumman's instant application bearing in mind that Grumman will be afforded reasonable attorneys' fees in connection with the entire fee application process. Grumman is hereby granted leave to take comparative discovery from LTV's counsel, Davis Polk & Wardwell, as bearing on the issue of reasonableness of rates and time charged in prosecuting LTV's opposition to Grumman's preliminary injunction application. Following discovery, the parties shall identify those fees and costs which are in dispute.

This action is hereby referred to United States Magistrate David F. Jordan for the purpose of supervising discovery, conducting a hearing on the issue of a reasonable attorneys' fees and submitting to this court a Report and Recommendation on an appropriate attorneys' fee award.

Further, Grumman's motion for an order voluntarily dismissing this action, without prejudice, pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, is granted,[11] and it is

SO ORDERED.

---

11. LTV has not opposed Grumman's motion for voluntary dismissal.