Filed 3/18/15  Certified for Publication 4/13/15 (order attached)

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| SAVE OUR UNIQUELY RURAL COMMUNITY ENVIRONMENT, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF SAN BERNARDINO et al., <br><br> Defendants and Respondents; <br><br> AL-NUR ISLAMIC CENTER, <br><br> Real Party in Interest and Respondent. | E059524 <br><br> (Super.Ct.No. CIVRS1202473) <br><br> OPINION |

APPEAL from the Superior Court of San Bernardino County.  Gilbert G. Ochoa, Judge.  Affirmed.

Otten & Joyce, Victor J. Otten and Brigid Joyce for Plaintiff and Appellant.

Jean-Rene Basle, County Counsel, Bart W. Brizzee, Deputy County Counsel, for Defendants and Respondents.

1

Paul Hastings, Panteha Abdollahi, Christopher M. Mooney and Kristopher R. Wood for Real Party in Interest and Respondent.

Plaintiff and appellant Save Our Uniquely Rural Community Environment (SOURCE) appeals from an award of attorney fees in a case arising under the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.), or CEQA. It contends that the trial court abused its discretion when it awarded $19,176, despite SOURCE's request for $231,098. We conclude that SOURCE has not met its burden of demonstrating an abuse of discretion, and we affirm the award.

BACKGROUND

Respondent and real party in interest Al-Nur Islamic Center is a nonprofit religious organization which intended to erect an Islamic community center and mosque in a residential neighborhood in an unincorporated area of San Bernardino County. The project was to include a 7,512-square-foot structure on 1.54 acres. The maximum occupancy of the structure was to be 262 people. SOURCE is an organization of individuals who opposed Al-Nur's plans based on the negative environmental impact the opponents believed the project would have on the neighborhood. Following a study of the environmental impact of the proposed project, the San Bernardino County Planning Commission adopted a mitigated negative declaration (MND) and issued a conditional use permit (CUP) for the project. SOURCE appealed to the San Bernardino County Board of Supervisors. After hearing testimony, the board of supervisors denied the appeal. SOURCE then filed a combined petition for writ of mandate and complaint for

2

injunctive relief. The complaint/petition alleged multiple violations of CEQA and of local zoning ordinances, all of which had been presented to the board of supervisors.

Following briefing and argument, the court granted the writ petition on a single ground, specifically that there is no factual basis in the administrative record to support the county's determination that the project would have a less than significant impact on the environment from construction of a new wastewater treatment facility, because a new facility was never analyzed. The county's initial study approved the project based on the use of an existing on-site septic system, despite its own contrary condition of approval No. 60, which required Al-Nur to connect the project to the City of Chino sewer system. However, Al-Nur stated that it intended to install a new septic tank or to supplement an existing septic tank "as it acknowledges that the existing system is inadequate." The court granted the petition and overturned the approval of the MND and CUP on grounds of the county's failure to properly analyze the project's impacts on the environment in the area of wastewater disposal. It ordered the county to prepare an analysis in compliance with CEQA of the project's impacts in that respect.

SOURCE then filed a motion for attorney fees. SOURCE sought $110,599 with a multiplier of two, for a total of $221,198 for its work on the administrative proceedings and the writ petition, plus $9,900 for its work on the attorney fees motion.[1] SOURCE sought payment based on $550 and $450 an hour, respectively, for the two partners who worked on the case, $250 an hour for an associate, and $110 an hour for a law clerk.

Al-Nur opposed the motion on the grounds that because of SOURCE's limited success, the petition failed to convey a public benefit justifying an award of attorney fees, that SOURCE had failed to demonstrate it was entitled to fees based on the current rates in Los Angeles rather than in San Bernardino County, that SOURCE had failed to demonstrate the number of hours it expended was reasonable and necessary, that it sought excessive fees for some of the work performed, and that a portion of the hours claimed were for activities related to the administrative proceedings and not to the litigation. It also asserted that a multiplier of two was not warranted.

---

[1] Attorney fee awards are based on the lodestar, i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. (*PLCM Group*, *Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) Generally, the reasonable hourly rate used for the lodestar calculation "is that prevailing in the community for similar work." (*Ibid*.) After making the lodestar calculation, the court may augment or diminish that amount based on a number of factors specific to the case, including the novelty and difficulty of the issues, the attorneys' skill in presenting the issues, the extent to which the case precluded the attorneys from accepting other work, and the contingent nature of the work. (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49.) "The purpose of such adjustment is to fix a fee at the fair market value for the particular action." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132.)

The trial court granted the motion, finding that SOURCE conferred a public benefit sufficient to warrant an award of attorney fees. However, at the hearing on the motion, the court stated that the amount requested was "outrageous." The court found the billing to be unreasonable, citing $10,000 for the motion for attorney fees as one example. It reduced the fee to $19,176, including $1,500 for the motion. It found that the reduction was justified because SOURCE succeeded on only one of its six CEQA arguments and on none of its four CUP arguments. It also found that SOURCE was not entitled to a double multiplier. It found that although the law firm took the case on a contingency fee basis after an initial payment of $10,000, it is "unreasonable to conclude that 246 hours spent by three attorneys and one law clerk over the course of a year precluded the firm from other work." The court further found that the administrative record of less than 1,000 pages was not particularly long and that CEQA questions are not particularly difficult for "alleged CEQA specialists." It found that counsel for SOURCE was experienced in that field and capable of handling the case "without having to reinvent the wheel."

SOURCE filed a timely notice of appeal.

LEGAL ANALYSIS

SOURCE HAS FAILED TO DEMONSTRATE THAT THE COURT

ABUSED ITS DISCRETION

Code of Civil Procedure section 1021.5 (hereafter section 1021.5) provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an

5

important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. . . ." This so-called private attorney general theory applies to actions to enforce provisions of CEQA. (*Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 611-612.) The party seeking attorney fees has the burden of proving that the litigation warranted an award of attorney fees and that the hours expended and the fees sought were reasonable. (*Id.* at p. 615.) Once the trial court has found, as the court did in this case, that the litigation conferred a public benefit warranting an award of attorney fees, the amount of fees to be awarded under section 1021.5 is within the trial court's discretion. (*Ibid.*) The party seeking fees has the burden to prove that the trial court abused its discretion in awarding less than the amount it sought. (*Ibid.*)

Under the abuse of discretion standard, a trial court's ruling will not be disturbed unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1133.) Abuse of discretion review "'asks in substance whether the ruling in question "falls outside the bounds of reason" under the applicable law and the relevant facts [citations].' [Citation.]" (*People v. Giordano* (2007) 42 Cal.4th 644, 663.) The trial court's ruling will not be reversed if reasonable people could disagree as to the proper outcome. (*Polanski v. Superior Court* (2009) 180 Cal.App.4th 507, 537.)

Here, SOURCE makes a number of arguments as to why it was entitled to the amount of fees it sought and why it was entitled to the double multiplier. It states valid reasons why a court might have awarded the fees it sought. That a court might have exercised its discretion in the manner SOURCE asserts is not, however, sufficient to demonstrate that it was an abuse of discretion not to award the fees SOURCE sought. A trial court may reduce attorney fees sought pursuant to section 1021.5 for a number of reasons. Here, the trial court stated some of its reasons for reducing the award. The record supports those reasons. It also supports other reasons for reducing the fees that the court might legitimately have relied upon, even if it did not state them explicitly.

First, a trial court may reduce attorney fees based on the plaintiff's degree of success. (*Center for Biological Diversity v. County of San Bernardino*, *supra*, 188 Cal.App.4th at pp. 612, 615.) Indeed, the extent of a party's success is a key factor in determining the reasonable amount of attorney fees to be awarded under section 1021.5. (*Guardians of Turlock's Integrity v. Turlock City Council* (1983) 149 Cal.App.3d 584, 601; *Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231, 248.) SOURCE's limited success was the first reason for reduction cited by the court in its minute order. This was not an abuse of discretion. Although "'"a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the . . . court did not adopt each contention raised . . . [citations]"'" (*Guardians of Turlock's Integrity v. Turlock City Council*, at p. 601), a reduced fee award "'is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. . . .'" (*Sokolow v. County of San Mateo*, at p. 248.) SOURCE's litigation

7

sought to "vacate and set aside the February 28, 2012 MND and NOD [(notice of determination)] as well as the CUP and all related Project Approvals," to require preparation of an environmental impact report, and to enjoin Al-Nur from undertaking any activities pursuant to the project approvals, but its success was limited to setting aside the MND and CUP solely for the purpose of obtaining further CEQA review on the single issue of waste water treatment. This is not an insignificant issue, by any means, but the trial court could reasonably conclude that a reduction in fees was warranted because of its rejection of the majority of SOURCE's contentions.

Another reason cited by the court was that the expenditure of 40 hours to prepare the reply brief was excessive.[2] The reply brief in support of the writ of mandate is only 14 pages long, and as is typical of reply briefs, much of it consists of reiterating arguments SOURCE made in its opening brief, tailored to respond to arguments made by Al-Nur in its opposition. It does not appear to have involved significant additional legal research or analysis of the record. Accordingly, we cannot say that it was an abuse of discretion to consider the time spent in preparing the brief excessive.

---

[2] The law firm actually billed 43.4 hours for work done by the two partners and a law clerk, and billed for the attendance of both partners at the hearing on the writ petition. However, only one partner, Mr. Otten, argued.

8

Similarly, to charge nearly $10,000 for a run of the mill attorney fees motion can reasonably be viewed as excessive, particularly where, as in this case, the motion fails to explain with any specificity why the charges are reasonable. It is not enough merely to state that counsel expended a certain number of hours in representing the client. Rather, the motion must affirmatively demonstrate that the hours spent were reasonable and necessary. (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 98 (*Gorman*).) With respect to the firm's work during the administrative proceedings, SOURCE bore the burden of proving the firm's activities at that level were ""useful and necessary and directly contributed to the resolution of [the action]."' [Citation.]" (*National Parks & Conservation Assn. v. County of Riverside* (2000) 81 Cal.App.4th 234, 242.) Here, the motion merely assumed that all of the hours expended were justified without making a specific showing. Accordingly, reducing the award based on SOURCE's failure to meet its burden of proof was not an abuse of discretion.

A trial court is also justified in reducing a claim if it believes the billing is unjustly inflated. (*Center for Biological Diversity v. County of San Bernardino*, *supra*, 188 Cal.App.4th at p. 616.) Because the ""experienced trial judge is the best judge of the value of professional services rendered in his court,"'" the trial court has broad discretion

to adjust a fee downward if it determines the fee is unreasonable.[3] (*Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1132.) The court's judgment will not be disturbed unless the appellate court is convinced that it is clearly wrong. (*Ibid*.) Here, in addition to finding that the law firm overcharged for the reply brief and for the attorney fees motion, the court also found that the number of hours billed for the litigation was excessive in that the litigation was not complex and could have been handled by SOURCE's experienced CEQA attorneys "without having to reinvent the wheel." Furthermore, Al-Nur pointed out that SOURCE's attorneys billed at partner rates for some work which appears, at least, to be clerical, such as preparing binders for a hearing and "print[ing] each page cited to in all briefs for easy reference during the hearing," saving the administrative record to a computer, and "review[ing] and tag[ging] cites to the administrative record." The firm billed 13.2 hours for these activities. The firm also billed 8.3 hours at partner

---

[3] SOURCE points out that Judge Gilbert Ochoa, who heard and ruled on the motion for attorney fees, was not the judge who presided over the writ proceedings. It contends that this fact justifies this court in exercising a less deferential review of Judge Ochoa's exercise of discretion with respect to attorney fees. (See *Center for Biological Diversity v. County of San Bernardino*, *supra*, 188 Cal.App.4th at p. 616; *Perkins v. Standard Oil Co.* (9th Cir. 1973) 474 F.2d 549, 552.)

However, although Judge Ochoa took the case over from Judge Barry Plotkin upon Judge Plotkin's retirement, Judge Plotkin had discussed the case with Judge Ochoa, who had been appointed as the court's CEQA judge. The order partially denying and partially granting the writ petition, which was signed by Judge Ochoa, states that the court had fully considered the pleadings, briefs and other papers on file, the contents of the administrative record and the oral arguments at the final hearing. We may presume, therefore, that Judge Ochoa was familiar with the issues raised in the case and had sufficient expertise to evaluate the attorney fees request. Moreover, because this was a writ proceeding rather than a trial, it cannot be said that Judge Plotkin was in a better position to assess the quality of the law firm's representation because he observed the attorneys at trial. (Cf. *Perkins v. Standard Oil Co.*, *supra*, 474 F.2d at p. 552.)

rates for "basic research" and for researching "rules re service of process," researching and calendaring all deadlines, and drafting an amended proof of service. It also billed 8.6 hours for a partner to research standards of review and "CEQA law and guidelines" and "requirements for opening brief," and billed 4.8 hours for research into the same matters by a law clerk. The trial court could reasonably have determined that billing at partner rates for these activities was excessive and that some of the hours billed were duplicative. And, the firm billed its law clerk's time at $110 an hour. In the absence of any evidence that that is the going rate for a law clerk, it was not abuse of discretion to consider that amount excessive. (See *Center for Biological Diversity v. County of San Bernardino* (2010) 185 Cal.App.4th 866, 897.)

Next, although SOURCE claims that its attorneys legitimately billed at rates which are common in Los Angeles and other larger markets, its motion provided no justification for not seeking counsel in San Bernardino or Riverside. As in all other respects, the party seeking the fee award has the burden to prove that it was justified in paying higher rates to attorneys from outside the local market. (See *Center for Biological Diversity v. County of San Bernardino*, *supra*, 188 Cal.App.4th at pp. 614-619.) SOURCE provided no evidence to support the conclusion that experienced CEQA attorneys were not available in the San Bernardino-Riverside market. Its motion merely stated that it "did not have any referrals for CEQA attorneys in San Bernardino County" and, at oral argument, counsel stated that he did not "know anyone in San Bernardino that has the experience of my firm." In the absence of evidence that SOURCE actually sought counsel in the San Bernardino-Riverside market, it would not have been an abuse

11

of discretion to base the lodestar on an amount commensurate with the rates charged in the local market for matters of similar complexity.

SOURCE also contends that it was entitled to a double multiplier "based on the contingent risk factor." It asserts that having taken the case on a contingent fee basis in and of itself entitles it to a multiplier. This is incorrect. "The unadorned lodestar reflects the general local hourly rate for a fee-bearing case; it does not include any compensation for contingent risk . . . ." (*Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1138, italics omitted.) "[A]djustment to the lodestar figure, e.g., to provide a fee enhancement reflecting the risk that the attorney will not receive payment if the suit does not succeed . . . is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees." (*Ibid*.) However, although taking a case on a contingent fee basis may support an award of a multiplier, it does not compel it. Rather, that is a decision left up to the trial court's discretion. (*Ibid*.)

In exercising its discretion to award a multiplier for contingent risk, the trial court "should consider whether, and to what extent, the attorney and client have been able to mitigate the risk of nonpayment, e.g., because the client has agreed to pay some portion of the lodestar amount regardless of outcome." (*Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1138.) It should also consider the extent to which taking the case on a contingent fee basis has precluded the attorney from taking other fee-generating work. (*Serrano v. Priest*, *supra*, 20 Cal.3d at p. 49.) Here, the fee was only partially contingent; SOURCE initially paid the law firm $10,000. The trial court found that the law firm's expenditure

12

of 246 hours over a period of a year did not deprive it of the ability to take on other fee-generating work. SOURCE dismisses this finding as "illogical," in that the law firm would have made substantial fees for 246 hours spent on other, fee-generating work. It did not, however, offer any evidence that it had to turn down other work that it might otherwise have been able to accept in order to devote those 246 hours to this case. Accordingly, it did not show that its income suffered as a result of taking this case on a partial contingency. And, the risk it took was mitigated by the initial payment of $10,000. For these reasons, we cannot say that it was an abuse of discretion not to award a multiplier based on the contingent nature of the representation.

SOURCE also contends that it was entitled to a multiplier based on other commonly applied factors, including the complexity of the questions involved and the superior skills its attorneys displayed in presenting them. (See *Serrano v. Priest*, *supra*, 20 Cal.3d at p. 49.) However, the trial court stated that CEQA issues are not particularly difficult for experienced CEQA specialists, and that SOURCE's experienced CEQA attorneys should have been able to handle the case "without having to reinvent the wheel." This clearly implies that the trial court did not find the case to have been complex by CEQA standards. And, regardless of the general quality of the law firm's representation, the court found that the fees charged were "outrageous" in light of what it saw as the relative lack of complexity of the case and small size of the administrative

13

record.[4]  As we have already discussed, we do not find its conclusion that the fees charged were excessive to be an abuse of discretion.  Accordingly, we cannot say it was an abuse of discretion to decline to apply a multiplier.

SOURCE also argues that the award must be reversed because the court failed to apply the lodestar method at all.  It contends that the court's failure to state the hourly amount it found reasonable and its reduction of the fee by 80 percent mandates reversal.  Citing *Gorman*, *supra*, 178 Cal.App.4th 44, SOURCE also contends that the amount awarded must have some discernible mathematical basis; it may not be "snatched whimsically from thin air."  (*Id*. at p. 101.)

In *Gorman*, *supra*, 178 Cal.App.4th 44, the court concluded, after carefully reviewing California Supreme Court precedent, that despite that court's emphasis on the need to apply the lodestar method in order to reach a rational and objective determination of a reasonable attorney fee, the court has never required that trial courts engage in any explicit analysis on the record.  (*Id.* at pp. 63-67.)  Indeed, in *Ketchum v. Moses*, *supra*, 24 Cal.4th 1122, the court held that the trial court was "not required to issue a statement of decision with regard to the fee award."  (*Id.* at p. 1140; see *Gorman*, at p. 65.)  And, although in *Ketchum* the court did reverse the judgment and remand for recalculation of attorney fees, it did not do so because the trial court failed to explain the basis for its award; it did so because "Ketchum's assertions of error [in the calculation of attorney fees] have sufficient merit to require remand of this matter for recalculation of attorney

_____

**4**  An administrative record of less than 1,000 pages is not large by CEQA standards.

14

fees under an appropriate exercise of discretion pursuant to the standard we have clarified herein." (*Ketchum*, at p. 1141.) Nevertheless, in *Gorman*, the court reversed and remanded for recalculation of attorney fees because it could not determine any rational basis for the trial court's calculation, which resulted in an award of "a little under 61 percent of [the] lodestar amount." (*Gorman*, at p. 99.) The trial court did not give any reason whatsoever for reducing the award below the amount sought by the appellant or explain how it arrived at the amount it chose to award. (*Id.* at p. 57, fn. 7.) And, although the amount awarded was very precise—$416,581.37—it did not correspond with any calculation the court could conceive. For these reasons, the court found that the award appeared to be "snatched whimsically from thin air" and was therefore an abuse of discretion. (*Id.* at pp. 99-101.)

We respectfully disagree with *Gorman*'s analysis. In our view, the precision of the amount awarded indicates that rather than acting arbitrarily, the trial court applied some rational calculation, even though the appellate court could not discern what it was. The appellate court was especially flummoxed by the $0.37 remainder (*Gorman*, *supra*, 178 Cal.App.4th at p. 100), but it apparently did not consider the possibility that the trial court applied some rational formula but made an error in its arithmetic. We do agree with *Gorman* that because "'"[a]ll intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent,"'" (*id.* at p. 59) and error must therefore be affirmatively shown (*Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1140), we cannot reverse an attorney fee award solely for lack of an explanation by the trial court. We can reverse only if the record contains some indication that the trial court considered

15

improper factors or did, indeed, simply snatch its award "from thin air." (*Gorman*, at p. 101.)

Here, in contrast to *Gorman*, *supra*, 178 Cal.App.4th 44, although the court did not state the lodestar amount or explain how it arrived at the amount awarded, it did make it clear that it intended to substantially reduce the fees based on what it saw as outrageous overbilling. It stated its opinion that the case was not complicated by CEQA standards and could be handled by experienced CEQA attorneys "without having to reinvent the wheel," thus indicating a belief that the billing was exaggerated. It also stated that it was basing its fee reduction on SOURCE's limited success in the litigation. As we have discussed, these are all legitimate reasons for reducing a fee award. Because the record shows that the court acted for legitimate reasons, we cannot find an abuse of discretion simply because it failed to make its arithmetic transparent. (*Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1140.) Accordingly, for this reason as well, we conclude that SOURCE has failed to meet its burden to show affirmatively that the trial court abused its discretion.[5]

---

[5] It would of course facilitate our review of attorney fee motions if trial courts would explicitly state the number of hours and the hourly rate found to be reasonable and then state any reasons for that determination, as well as for applying or not applying a multiplier.

DISPOSITION

The judgment is affirmed.  Respondent and real party in interest Al-Nur Islamic

Center is awarded costs on appeal.[6]


McKINSTER
Acting P. J.

We concur:


KING
J.


MILLER
J.

---

[6] Costs are not awarded to respondents the County of San Bernardino, the San Bernardino County Land Use Services Department, the San Bernardino County Planning Commission, and the San Bernardino County Board of Supervisors, in that those parties merely joined in the briefing filed by real party in interest.

17

Filed 4/13/15

COURT OF APPEAL -- STATE OF CALIFORNIA
FOURTH DISTRICT
DIVISION TWO

## **ORDER**

| | |
|---|---|
| SAVE OUR UNIQUELY RURAL COMMUNITY ENVIRONMENT, | E059524 |
|    Plaintiff and Appellant, | (Super.Ct.No. CIVRS1202473) |
|    v. | |
| COUNTY OF SAN BERNARDINO et al., | The County of San Bernardino |
|    Defendants and Respondents; | |
| AL-NUR ISLAMIC CENTER, | |
|    Real Party in Interest and Respondent. | |

_____

THE COURT

The requests, filed April 7, 2015, for publication of a nonpublished opinion filed in above-entitled matter on March 18, 2015, are GRANTED. The opinion meets the standards for publication as specified in California Rules of Court, rule 8.1105(c).


McKINSTER
Acting P. J.

We concur:


KING
J.


MILLER
J.

1