[Civ. No. 47999. First Dist., Div. Three. July 14, 1982.]

RESOURCE DEFENSE FUND et al., Plaintiffs and Appellants, v. COUNTY OF SANTA CRUZ, Defendant and Respondent; T. E. SCHMIDT et al., Real Parties in Interest and Respondents.

802

COUNSEL

Mitchell Page, Thomas N. Brown and Page & Coben for Plaintiffs and Appellants.

George Deukmejian, Attorney General, R. H. Connett, Assistant Attorney General, Daniel P. Selmi, Mark I. Weinberger, Roderick Walston

and Mary E. Hackenbracht, Deputy Attorneys General, as Amici Curiae on behalf of Plaintiffs and Appellants.

Clair A. Carlson, County Counsel, and Dwight L. Herr, Chief Deputy County Counsel, for Defendant and Respondent.

Dennis J. Kehoe, Adams, Levin, Kehoe, Bosso, Sachs & Bates, Samuel S. Stevens and Murphy, Williams, Stevens & Book for Real Parties in Interest and Respondents.

OPINION

BARRY-DEAL, J.—

*Summary*

We hold that issuance by the state Office of Planning and Research of an extension of time for completion of an adequate general plan (Gov. Code, § 65302.6[1]) does not validate or immunize a city's or county's prior approval of land use permits from the requirement of conformity to a valid general plan.

*Statement of the Case*

On May 15, 1979,[2] petitioners (Resource Defense Fund, an environmental association, and Mary Hammer, a citizen taxpayer of respondent county) filed a petition for writ of mandate and injunctive relief. In their first cause of action petitioners alleged that respondent County of Santa Cruz (hereafter respondent) had failed to adopt a general plan as mandated by section 65302 and that therefore respondent had improperly approved "Minor Land Divisions" of property owned by real parties in interest Schmidt and Packard.[3] In their second cause of action petitioners alleged that respondent could not properly enact zoning ordinances without the requisite general plan. Petitioners sought writ of mandate commanding respondent to rescind its approval of the

---

[1]All statutory citations are to the Government Code unless otherwise indicated.

[2]All dates are in the year 1979 unless otherwise indicated.

[3]A third real party in interest, Frederick, is not a party to this appeal.

"Minor Land Division" maps and to cease allowing land divisions and enacting zoning ordinances. They also sought injunctive relief until respondent brings its general plan into compliance with state law.[4]

On June 8, respondent both demurred to and answered the petition. The demurrer was on three grounds: (1) the petition failed to state facts sufficient to constitute a cause of action because respondent had been granted an extension of time by the state Office of Planning and Research (hereafter OPR) which had rendered moot the question whether respondent had a general plan which met the requirements of state law; (2) laches; and (3) the statute of limitations.

In its answer respondent admitted that its general plan "needs to be revised and amended to conform to current standards ...," but alleged that it had adopted all mandatory elements of a general plan. The answer alleged affirmative defenses raised in the demurrer (mootness, laches, and statute of limitations). Schmidt and Packard raised similar defenses by way of answer and demurrer.

On June 20, the court sustained demurrers as to Schmidt and Packard only. On July 25, the court denied a motion to reconsider and filed its order sustaining the demurrer without leave to amend. The court ruled that as to Schmidt and Packard the OPR extension rendered the petition moot; the court expressly declined to reach the issues of laches and the statute of limitations.

On July 25, the court filed its judgment dismissing the action as against Packard and Schmidt and awarding them costs. Petitioners filed timely notice of appeal on August 9.

### Statement of the Facts

Real party in interest T. E. Schmidt owns real property which was the subject of minor land division No. 77-1172-MLD, approved by the county planning commission on November 1, 1978. Approval provided for creation of three parcels, composed of six acres, eight acres, and eighteen and one-half acres. The county board of supervisors denied appeal of this approval on December 19, 1978.

---

[4]Petitioners amended their petition on June 4, naming another real party in interest which is not a party to this appeal.

Real parties in interest William and Jean Packard own a single family dwelling situated on 20 acres of land. On November 8, 1978, the planning commission approved minor land division No. 77-852-MLD, dividing their property into three parcels. Appeal of this approval was also denied December 19, 1978.

On March 20, 1979, the county board of supervisors adopted resolution No. 157-79, requesting an extension of time to adopt general plan amendments. The resolution recited that the county's general plan "needs to be updated and revised to conform with current standards; . . ." and authorized the county director of the community resources agency to apply, pursuant to section 65302.6, for an extension of time to adopt amendments to the following elements of the general plan: (1) land use; (2) housing; (3) circulation; and (4) parks, recreation, and open space.

On May 11, the deputy director of OPR approved the request and granted an extension "from the date of your [director, community resources agency] receipt of this letter to May 1, 1980." The extension carried four conditions restricting approval of applications for tentative and final subdivision maps, parcel maps, rezonings, and use permits. On May 21, OPR informed the county of its intention to revise its extension conditions contingent upon the county revising its "Rural Development Matrix" in specified particulars. A final amended extension was promulgated on June 7, after OPR was satisfied with the county's revision of its "Rural Development Matrix." This final amended extension contained conditions effective from receipt of the letter to May 1, 1980, including conditions on approval of applications for tentative subdivision maps, tentative parcel maps, rezonings, and use permits. It does not mention such conditions on final map approvals.[5]

Other pertinent facts are developed in the discussion.

---

[5]In their memorandum of points and authorities in support of motion to reconsider sustaining of the demurrer, appellants alleged, and Schmidt and Packard do not dispute, that the parcels in question lie in the "Summit Area" of the county, which is noted for water quality and quantity problems, extreme fire danger, and major earthquake hazards. The Schmidt and Packard proposals, appellants allege, are inconsistent with four components of the 1961 general plan and with other plans and elements since adopted. OPR states that these parcels apparently are subject to the limitations contained within the "Rural Development Matrix" which has been incorporated into the county's OPR extension, and that therefore the issues raised herein are of more than academic interest.

*Discussion*

Each county is required to adopt a "comprehensive, long-term general plan for . . . [its] physical development . . . ." (§ 65300.) The plan must include, inter alia, a statement of policies and nine specified elements: land use, circulation, housing, conservation, open-space, seismic safety, noise, scenic highway, and safety. (§ 65302.)

Under state law, the propriety of virtually any local decision affecting land use and development depends upon consistency with the applicable general plan and its elements. In particular, any action affecting open-space land must be consistent with the local open-space plan (§§ 65563, 65566, 65567; *Save El Toro Assn.* v. *Days* (1977) 74 Cal.App.3d 64 [141 Cal.Rptr. 282]); local zoning ordinances must be consistent with the general plan (§ 65860); and approvals pursuant to the Subdivision Map Act (§ 66410 et seq.) must be consistent with the general plan (§§ 66473.5, 66474).

Applicable local law also requires consistency with the general plan. The Santa Cruz County Subdivision Ordinance provides that no tentative map shall be approved " . . . unless it is found that the proposed subdivision, together with the provisions of its design and improvements, is consistent . . . " with the applicable general or specific plan. (Santa Cruz County Subdivision Ordinance, § 13.08.402.)[6]

■ Since consistency with the general plan is required, absence of a valid general plan, or valid relevant elements or components thereof, precludes enactment of zoning ordinances and the like. (See *Save El Toro Assn.* v. *Days, supra,* 74 Cal.App.3d 64; accord *Camp* v. *Board of Supervisors* (1981) 123 Cal.App.3d 334, 348-353 [176 Cal.Rptr. 620].) However, absence of a valid general plan does not preclude all development activity. Section 65302.6 establishes a procedure whereby local governments can proceed with development pending completion of a valid general plan. The local governing body (here the county board of supervisors) may apply to the director of the OPR for an extension of time for the preparation and adoption of one or more general plan elements required by statute.

---

[6]County counsel has provided us with photographic copies of pertinent county code provisions. They appear to be the proper subject of judicial notice as long as opposing parties are given an opportunity to express their views on the matter. (Evid. Code, § 451 et seq.; but see *County of San Mateo* v. *Palomar Holding Co.* (1962) 208 Cal. App.2d 194, 198 [24 Cal.Rptr. 905].)

Subdivision (d) of section 65302.6 provides that "[d]uring the extension of time specified in this section, the city or county is not subject to the requirement that a complete and adequate general plan be adopted or the time within which it must be adopted or the requirement that the land use be compatible or consistent with the general plan as required by [the statutes which we have cited above] . . . ."

The trial court held that the OPR's grant of an extension pursuant to this section rendered moot (1) any challenge to the county's ability to approve further land divisions and zoning or rezoning pending revisions of the general plan; and (2) petitioners' challenge to the validity of the "Minor Land Divisions" in question, since the extension exempted previously approved tentative maps from its requirements, including the map already recorded. The propriety of this retroactive application of the OPR extension is the primary focus of the briefs filed in this appeal. However, we deem it necessary to first examine the issues which the trial court declined to reach—laches and the statute of limitations—since resolution of them in a manner adverse to petitioners might render it inappropriate for us to address the extension question. (*Holt* v. *County of Monterey* (1982) 128 Cal.App.3d 797 [180 Cal.Rptr. 514].)

*Statute of Limitations*

■ The Schmidt and Packard land divisions are subject to the requirements of the Subdivision Map Act (§ 66410 et seq., hereafter the Act). The former provision that the Act applies only where there are five or more subdivided parcels has been eliminated. (§ 66424; see 4 Miller & Starr, Current Law of Cal. Real Estate (rev. ed. 1977) § 24:34, p. 62.) Although it provides that regulation and control of subdivisions is vested in the local government (§ 66411), the Act establishes procedures regarding approval of subdivision maps and review of decisions approving or disapproving them. (See 4 Miller & Starr, *supra*, § 24:36 et seq., p. 68 et seq.)

At the time relevant herein, section 66499.37 provided, in part, "Any action or proceeding to attack, review, set aside, void or annul the decision of an advisory agency, appeal board or legislative body concerning a subdivision, or any of the proceedings, acts or determinations taken, done or made prior to such decision, or to determine the reasonableness, legality or validity of any condition attached thereto, shall not be maintained by any person unless such action or proceeding is commenced

and service of summons effected within 180 days after the date of such decision . . . ."[7]

It is undisputed that the legislative body's determination in these cases occurred on December 19, 1978, and that the petition for writ of mandate was filed May 15, 1979, 147 days later, and well within the statutory period if section 66499.37 applies. Respondent and real parties allege, however, that a 90-day statute applies and that this action was therefore barred.

They argue that the type of review with which we are concerned in this action is by administrative (as opposed to ordinary) mandate and is provided for in Code of Civil Procedure section 1094.5 (as opposed to Code Civ. Proc., § 1085). The 90-day statute of limitations contained in Code of Civil Procedure section 1094.6, subdivision (b), applies to such proceedings. Section 1094.6, subdivision (g), provides that the section applies to a local agency only if the governing board adopts a resolution or ordinance to that effect. But if such ordinance is adopted, ". . . the provisions of this section shall prevail over any conflicting provision in any otherwise applicable law relating to the subject matter."

The argument continues: The County of Santa Cruz has adopted an ordinance implementing Code of Civil Procedure section 1094.6.[8] Respondent and real parties therefore conclude that the 90-day statute applies in the instant proceeding.

It is true that in the usual case review of land development decisions is by administrative mandate. (*McMillan* v. *American Gen. Fin. Corp.* (1976) 60 Cal.App.3d 175, 181-182 [131 Cal.Rptr. 462]; *Carmel Valley View, Ltd.* v. *Board of Supervisors* (1976) 58 Cal.App.3d 817, 820

---

[7]A 1980 amendment substituted "90 days" for "180 days." (Stats. 1980, ch. 1152, § 14, p. 3799.)

[8]Santa Cruz County Code section 1.04.110 provides: "Judicial review of any decision of the County or of any commission, board, officer or agent thereof, may be had pursuant to Section 1094.5 of the Code of Civil Procedure only if the petition for writ of mandate pursuant to said section is filed within the time limits specified in Section 1094.6 of the Code of Civil Procedure. Thereafter all persons are barred from commencing or prosecuting any such action or proceeding or asserting any defense of invalidity or unreasonableness of such decision, proceedings, determinations, or actions taken.

"The provisions of Section 1094.6 of the Code of Civil Procedure shall not expand the scope of judicial review but shall prevail over any conflicting provision in any otherwise applicable law relating to the subject matter. (Ord. 2362, 11/30/76)"

[130 Cal.Rptr. 249]; see *Foundation for San Francisco's Architectural Heritage* v. *City and County of San Francisco* (1980) 106 Cal.App.3d 893, 905 [165 Cal.Rptr. 401]; and see 4 Miller & Starr, *supra*, § 24:49, p. 98 (Oct. 1981 pocket supp.) p. 54.) However, here, as in *Holt* v. *County of Monterey, supra,* 128 Cal.App.3d 797, appellants did not seek judicial review of the factual basis of a county's quasi-judicial decision. Rather, they alleged that the county had no valid general plan and that therefore approval of the subject subdivisions and any zoning ordinance was necessarily invalid because they could not conform to a nonexistent plan. By their petition they sought "to compel the performance of an act which the law specifically enjoins, ..." (Code Civ. Proc., § 1085.) They alleged that a situation existed in which the county had *no discretion*, but was required to disapprove the subdivisions and to refrain from enacting any zoning ordinances. We conclude that this was a traditional mandate proceeding and that the 180-day period provided in section 66499.37 applied.

### *Laches*

■ Even if an action is brought within the statutory period, it may be barred by laches if unjustified delay has operated to the injury of another. (*Holt* v. *County of Monterey, supra,* 128 Cal.App.3d at p. 801.) In *Holt*, for example, plaintiff knew of the proposed project for two and one-half years before instituting his action, and during this period of delay the developers expended over $4 million in reliance upon the county's prior approval of a specific plan. (*Ibid.*)

The record before us does not present such a clear case of laches. In its memorandum of points and authorities in support of demurrer, respondent county alleged that although appellants' appeals to the board were denied on December 19, 1978, they delayed until May 15, 1979, before filing their suit. In the case of Schmidt the challenge was delayed until after the parcel map was filed and recorded.

In his answer to the first amended petition, real party in interest Schmidt alleged that he had owned his parcel since 1964, that he applied for a "Minor Land Division" in 1977, and that he expended not only "substantial time, expense and effort ... in processing this application with the County of Santa Cruz over a lengthy period of time. [*sic*] but also substantial additional time, money and expense ... subsequent to and based upon the approved [application] to [his] substantial detriment ...."

As stated above, the trial court did not take evidence on or otherwise reach the merits of the laches issue. Upon remand it will be incumbent upon the court to do so, since equitable considerations may govern the correct result in these cases. (*Holt* v. *County of Monterey, supra*, 128 Cal.App.3d at p. 801, and cases cited therein.)

### Effect of OPR Extension

■ Appellants contend that the trial court erred in holding that the OPR's grant of the extension pursuant to section 65302.6 rendered the issues raised in their petition "moot." They assert, and OPR agrees, that OPR does not have the authority to "exempt" illegally approved tentative maps from appellants' challenge. We find appellants' and OPR's views persuasive and accordingly reverse the judgment.

The propriety of appellants' claim is, in the first instance, apparent from the face of the statute itself. Section 65302.6, which we set out in full in the margin,[9] provides in relevant part that a city and/or county

---

[9]Section 65302.6 provides: "(a) Notwithstanding any other provision of law, upon application by a city, county, or city and county, including any city incorporated after September 30, 1974, the Director of Planning and Research shall grant a reasonable extension of time, not to exceed one year from the date of issuance of the extension, for the preparation and adoption of one or more general plan elements required by this article, if the legislative body of a city, county, or city and county, after a public hearing, makes one or more of the following findings:

"(1) Data required for the element must be provided by another agency and it has not yet been provided.

"(2) In spite of sufficient budgetary provisions and substantial recruiting efforts, the local agency has been unable to obtain necessary staff or consultant assistance.

"(3) A disaster has occurred requiring reassignment of staff for an extended period or requiring a complete reevaluation and revision of the entire general plan, or both.

"(4) Review procedures in local ordinances require an extended public review process which has resulted in delaying the decision by the local government's legislative body.

"(5) The city or county is jointly preparing the elements along with one or more other jurisdictions, pursuant to an existing agreement and timetable for completion.

"(6) Additional procedural reasons exist which justify the granting of an extension, so that the production and adoption of complete and adequate general plans is promoted.

"(b) The purpose of this section is to permit cities and counties that have not yet adopted complete and adequate general plans to continue to review and approve development proposals pending adoption of a complete and adequate general plan; provided, however, such approvals are consistent with local policies and the element or elements for which an extension of time is sought.

"(c) The application for an extension specified in subdivision (a) of this section shall contain the following elements:

"(1) A resolution of the legislative body of the city, county, or city and county adopted after a public hearing setting forth in detail the reasons why the general plan was not previously adopted as required by law, including one or more of the findings made

may apply to OPR for an extension of time for the preparation and adoption of one or more general plan elements. (§ 65302.6, subd. (a).) The purpose of the section "is to permit cities and counties that have not yet adopted complete and adequate general plans *to continue to review and approve development proposals* pending adoption of a complete and adequate general plan; *provided*, however, *such approvals are consistent with local policies and the element* or elements for which an extension of time is sought." (§ 65302.6, subd. (b), italics added.) To achieve that purpose subdivision (d) establishes an exemption from the various requirements that land uses be consistent with the general plan and its elements. It states: *"During the extension of time* specified in this section, *the city or county is not subject to* the requirement that a complete and adequate general plan be adopted or the time within which it must be adopted or *the requirement that the land use be com-*

---

by the legislative body pursuant to subdivision (a), and the amount of additional time necessary to complete the preparation and adoption of all required elements.

"(2) A copy of the specific budget and schedule for the general plan preparation and adoption including plans for citizen participation and expected interim products. The budget and schedule should be of sufficient detail to allow the director to assess each applicant's progress at regular intervals during the term of the extension.

"(3) A set of proposed policies and procedures which would ensure, during the extension of time granted pursuant to this section, that the land use proposed in an application for a subdivision, rezoning, land use permit, variance or building permit will be consistent with the existing general plan elements, and on the basis of available information will be consistent with the new elements or plan proposals being considered or studied.

"(d) During the extension of time specified in this section, the city or county is not subject to the requirement that a complete and adequate general plan be adopted or the time within which it must be adopted or the requirement that the land use be compatible or consistent with the general plan as required by Section 65302, 65563, 65567, 65860, 65910, or 66473.5, or subdivision (a) or (b) of Section 66474, of the Government Code. The provisions of this section shall apply only to those elements for which an extension has been granted. The city or county shall comply with all state laws and shall base all required findings on the existing adopted elements.

"(e) The director may impose any conditions on extensions of time granted which the director deems are necessary to ensure full compliance with the State Planning and Zoning Law. In establishing such conditions, the director may adopt or modify and adopt any of the policies and procedures proposed by the city, county, or city and county, pursuant to paragraph (3) of subdivision (c).

"(f) In the event that a city or county which has been granted a time extension pursuant to this section determines that it will not be able to complete the element or elements for which the extension has been granted within the prescribed time period, such city or county may request one additional extension. The director may grant such an additional extension of time, not to exceed one year, provided that the city or county is able to demonstrate that both substantial effort and substantial progress has [*sic*] been made toward the completion of such element or elements.

"(g) An extension of time, granted pursuant to this section, for the preparation and adoption of one or more elements of a city or county general plan shall not be subject to the provisions of Division 13 (commencing with Section 21000) of the Public Resources Code."

*patible or consistent with the general plan* .... The provisions of this section shall apply only to those elements for which an extension has been granted. ..." (Italics added.)

Nothing on the face of the statute purports to exempt approvals which preceded the period of extension from the requirement that land use be compatible or consistent with the general plan. Rather, when the statute is read "'according to the usual, ordinary import of the language employed in framing [it] ...' [citations]" (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]), it is clear that the exemption applies only to approvals which occur "during" the period of the extension.

As suggested by OPR, this view finds further support in subdivision (c)(3), which requires that the city's or county's application for extension include a set of proposed policies and procedures to "ensure, *during the extension of time* granted pursuant to this section, that *the land use proposed in an application* for a subdivision, rezoning, land use permit, variance or building permit will be consistent with the existing general plan elements, and on the basis of available information will be consistent with the new elements or plan proposals being considered or studied." (Italics added.) Subdivision (e) permits the director of OPR to impose conditions on extensions granted under the section in order to ensure compliance with state planning and zoning law. To that end he or she may adopt the city's or county's proposed policies and procedures under subdivision (c)(3).

The statutory scheme may be described as follows: No land development may proceed unless it conforms to a valid general plan. However, an exception exists, and development may be approved during an extension under section 65302.6 so long as that development conforms with both the existing general plan and the proposed revision.

Respondent and real parties stress the fact that the initial extension of May 11 contained a condition prohibiting approval of final maps for rural areas (with limited exceptions), whereas the final extension of June 7 contained no conditions regarding final maps. They argue that the lack of OPR conditions regarding approval of final parcel maps insulated the prior approval of their tentative parcel maps from attack, in essence proposing that under the terms of the OPR extension there is an absolute right to approval of their final maps. This argument misinterprets existing law.

*Youngblood* v. *Board of Supervisors* (1978) 22 Cal.3d 644 [150 Cal.Rptr. 242, 586 P.2d 556] held that it is the general plan in effect at the time of approval of the tentative map to which the subdivision is required to conform, and that thereafter approval of the final map consistent with the tentative map becomes a ministerial act, even if a new and different general plan is in effect. (*Id.*, at pp. 655-656.) The case does not hold or even suggest that approval of a final map is a ministerial act if approval of the tentative map was improper because it did not conform to a valid general plan. Thus while it seems clear from the statutory scheme that an OPR extension may properly impose conditions on approval of final or parcel maps (see § 65302.6, subd. (e)), it does not follow that deletion of or failure to establish conditions on approval of certain final parcel maps in this case retroactively relieved respondent and real parties from the requirements that the land divisions in question should have conformed to a valid general plan in existence at the time the tentative maps were approved.

Neither are we persuaded by respondent's argument that the 1979 amendment to section 65302.6, which provides that the extension shall (rather than may) be granted in the proper case, compels a different conclusion. The stated legislative purpose of the amendment was to provide extensions during which controversies over the interpretation and validity of local general plan elements could be settled. (Stats. 1979, ch. 920, § 2, p. 3193.) As suggested by OPR, nothing indicates that the amendment abated pending litigation or declared that extensions should apply retroactively.

We therefore hold that the trial court erred when it ruled that the OPR extension pursuant to section 65302.6 rendered moot the issues raised in the petition.

The judgment is reversed and the cause is remanded to the trial court with directions to first consider the issue of laches and then, to the extent appropriate after resolution of that issue, the merits of the first amended petition.

Scott, Acting P. J., and Feinberg, J., concurred.

On August 5, 1982, the opinion was modified to read as printed above.