[No. A050216. First Dist., Div. Five. Oct. 18, 1991.]

HARROMAN COMPANY et al., Plaintiffs and Appellants, v.
TOWN OF TIBURON et al., Defendants and Respondents.

**[Opinion certified for partial publication.‡]**

‡Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.

COUNSEL

Brekhus, Williams, Wester & Hall, Peter B. Brekhus, Linda J. Philipps and Scott A. Williams for Plaintiffs and Appellants.

Gary T. Ragghianti and Lisa A. Goldfien for Defendants and Respondents.

OPINION

LOW, P. J.—The Town of Tiburon denied plaintiffs' application for approval of the Marinero Estates master plan for development of their property. Plaintiffs sued, seeking a writ of administrative mandamus (Code Civ. Proc., § 1094.5), declaratory relief and damages for inverse condemnation. The trial court denied the petition for a peremptory writ, sustained respondents' demurrer to the declaratory relief allegation in the complaint without leave to amend, and dismissed the "taking" causes of action. We affirm as to the writ and petition for declaratory relief, holding that when plaintiffs file a tentative subdivision map during revision of Tiburon's general plan, the proposal must be evaluated against the draft general plan under consideration rather than the existing general plan.

In July 1988, plaintiffs, owners of an undeveloped parcel in Tiburon, filed an application for approval of a master plan to build 70 housing units on its 101-acre parcel. At that time, the town was in the process of revising its general plan adopted in 1974. The Governor's Office of Planning and

Research (OPR) had granted Tiburon the first of two year-long extensions to complete the revisions of its general plan. These extensions were authorized by Government Code section 65361.[1] The extensions ran from December 1, 1987, to November 29, 1989. A new general plan was adopted by the Tiburon Town Council on September 28, 1989.

The property is situated along a large tract of open space, straddling the Tiburon Ridge. Plaintiffs' master plan proposed the construction of 70 single family homes clustered on one-third of its 101-acre parcel, with 63 percent of the remaining area dedicated to permanent open space, intersected by 1.2 miles of hiking trails and paths. Under the existing general plan the property was zoned RPD-1, which allowed a density range of .2 to 1 dwelling unit per gross acre. It was and is plaintiffs' contention that their proposal to build 70 units fell within the old general plan in existence at the time they filed their application.

Upon receipt of plaintiffs' July 1988 application, the town advised them that it must review it under a "draft" general plan as required by the extension agreements. The first draft permitted a maximum of 20 units for the property. Public hearings on the revised draft general plan and on plaintiffs' application were conducted. Subsequently, on April 26, 1989, the planning commission recommended approval of the general plan, containing a density of .4 units per acre, or 40 units maximum for the development.

On June 28, 1989, the planning commission held a public hearing and adopted Resolution No. 469-89, denying plaintiffs' application as "inconsistent" with the maximum density of .4 dwelling units per gross acre and with other conservation, land use and open space goals and policies in the draft general plan. On August 2, 1989, following a public hearing, the town council adopted Resolution No. 2625, upholding the commission's decision to deny the application, primarily as being inconsistent with the maximum density contained in the draft general plan and in violation of the ridgeline setback requirements.

On September 28, 1989, the town council adopted a new general plan, providing for a density of .3 units per acre, or 30 units maximum for the plaintiffs' parcel.

Plaintiffs' action against the town alleged: section 65589.5 requires that the master plan application should have been approved as meeting the density requirements of the existing general plan (first cause of action);

[1]Hereafter, all statutory references are to the Government Code unless otherwise indicated.

adoption of the "draft" general plan to deny the application was a sham designed to avoid the requirements of section 65589.5 (second cause of action); a judicial declaration that the extension did not excuse compliance with section 65589.5 (third cause of action); application of the draft general plan to their proposed master plan deprived plaintiffs of their entire economic and feasible use of the property and constituted an unconstitutional taking (fourth cause of action); the town's decision was not supported by substantial evidence, and adoption of the "draft" general plan constituted impermissible "spot zoning" (fifth cause of action); the extensions from OPR are void because the town did not provide plaintiffs with notice of the hearings to obtain the second extension (sixth cause of action); damages resulting from inverse condemnation (seventh cause of action); and unreasonable precondemnation activity (eighth cause of action).

After hearing and review of the administrative record, the trial court denied the writ petition and dismissed all remaining causes of action, finding, inter alia, the taking claims were not "ripe" for judicial review; there was insufficient evidence of unlawful "precondemnation zoning activity"; and plaintiffs failed to prove their claim that the property was "spot zoned."

I

A

Plaintiffs contend that section 65589.5 prevents the downzoning that occurred in this case. They assert that under the statute the town council was barred from reducing the density of the project from that allowed by the existing general plan, without first making the public health or safety findings required by the statute.

■ The denial of plaintiffs' application for their proposed development is properly reviewable by the writ of administrative mandamus. (Code Civ. Proc., § 1094.5; *City of Fairfield* v. *Superior Court* (1975) 14 Cal.3d 768, 773, fn. 1 [122 Cal.Rptr. 543, 537 P.2d 375]; *Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 123, 128 [109 Cal.Rptr. 799, 514 P.2d 111].) The standard and scope of review depends on the error alleged. When the plaintiffs allege the town abused its discretion by denying their application for a development permit, review is limited to the administrative record to determine whether the town proceeded in the manner required by law or if there is substantial evidence to support the town's decision. (See Code Civ. Proc., § 1094.5, subd. (b); *Selby Realty Co., supra,* at pp. 123-124.) By challenging the town's interpretation and applicability of a statute, plaintiffs raise a question of law requiring an independent determination by the reviewing court. (*City of Coachella* v. *Riverside County Airport Land Use*

*Com.* (1989) 210 Cal.App.3d 1277, 1289 [258 Cal.Rptr. 795].) We must decide whether section 65361 and the extensions issued require the town council to review plaintiffs' development application against the "draft" general plan rather than the existing general plan.

### B

In its resolution denying plaintiffs' master plan application, the town council found that the proposed plan was inconsistent with the draft general plan as follows: "the proposed density of 0.7 dwelling units per gross acre is inconsistent with the maximum of 0.4 dwelling units per gross acre stipulated in draft general plan Land Use Element Policy LU-17. . . . [¶] . . . the proposed Master Plan is inconsistent with draft Open Space & Conservation Element Policy OSC-5, which requires horizontal and vertical setbacks from the Tiburon Ridgeline. Approximately 13 proposed residences would encroach into the horizontal setback, and approximately 31 proposed residences would encroach into the vertical setback from the ridgeline . . . ." The master plan also was found to be inconsistent with several goals and policies of the draft general plan and with at least one of the land use policies of the *existing* plan. Furthermore, the master plan violated the town's 1981 "Housing Element Technical Appendix," which prescribed a maximum of 30 units as suitable for this property. The town council concluded "that there are clear and convincing inconsistencies between the proposed Master Plan and the draft general plan. The Town Council finds that reconciliation of such inconsistencies would require the filing of an application for general plan amendment."

The extension letter issued by the OPR was in response to the town's request for additional time to revise the land use, circulation, conservation, open space, noise, safety, and parks-and-recreation elements of Tiburon's general plan. The letter, granting the first of two 1-year extensions beginning December 1, 1987, "release[d] the town from the requirement that it adopt and maintain a complete and adequate general plan during said extension period." As for applications submitted during the extension period, it provided: "Any discretionary land use project application that does not fall under conditions 1(a) or 1(b) above [applications submitted before December 1, 1987] shall not be approved by the town unless the town makes written findings, based upon substantial evidence in the record, that the project is, or has reasonable probability of being, consistent with the draft general plan."

The extension was granted pursuant to section 65361, which permits the Director of OPR to grant no more than two 1-year extensions for "the

preparation and adoption of all or part of the general plan," after a public hearing and upon a proper showing by the city or county.

## C

■ Plaintiffs do not contend the town was not entitled to the extensions or that the OPR improperly granted the extensions. Rather, they assert that section 65589.5 compelled the town council to review their master plan application against the existing general plan.

Section 65589.5, as it existed at the time of plaintiffs' application, read:

"When a proposed housing development project complies with the *applicable general plan*, zoning, and development policies in effect at the time that the housing development project's application is determined to be complete, but the local agency proposes to disapprove the project or to approve it upon the condition that the project be developed at a lower density, the local agency shall base its decision regarding the proposed housing development project upon written findings supported by substantial evidence on the record that both of the following conditions exist:

"(a) The housing development project would have a specific, adverse impact upon the public health or safety unless the project is disapproved or approved upon the condition that the project be developed at a lower density.

"(b) There is no feasible method to satisfactorily mitigate or avoid the adverse impact identified pursuant to subdivision (a), other than the disapproval of the housing development project or the approval of the project upon the condition that it be developed at a lower density." (Added by Stats. 1982, ch. 1438, § 2, p. 5484, italics added.)

Plaintiffs rely on section 65589.5 and other statutes (e.g., §§ 65580, 65581, 65589.6) enacted in recognition of the dire need for housing in this state. Plaintiffs argue those goals cannot be met if the town is allowed to reduce the density requirements below that contained in the general plan existing at the time their application was filed. However, we must also give effect to the statutory mechanism for amending a community's general plan to meet the needs of a changing population or new environmental concerns, or to comply with regional and statewide policies and goals. Sections 65589.5 and 65361 must be considered " 'in the context of the entire statutory system of which [they are] a part, in order to achieve harmony among the parts.' [Citation.]" (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1009 [239 Cal.Rptr. 656, 741 P.2d 154].) ■ We are guided by the rule

that, "where possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose. [Citation.]" (*People* v. *McCart* (1982) 32 Cal.3d 338, 342-343 [185 Cal.Rptr. 284, 649 P.2d 926].)

■ Plaintiffs interpret the term "applicable general plan" in section 65589.5 to mean the adopted general plan existing at the time they filed their application, and not the proposed or "draft" general plan. This interpretation would nullify any remedial changes to the existing general plan made during the review process. This construction would also impair the role of the Director of OPR, among whose duties it is to develop comprehensive statewide goals and policies for land use regulation and to assist local governments and agencies in developing and adopting complimentary guidelines for their general plans (§§ 65040, subd. (*l*), 65040.2). We do not believe the Legislature intended this result.

Sections 65361 and 65589.5 are found in title 7, division 1, chapter 3 (Local Planning) of the Government Code. Article 5 (§ 65300 et seq.) requires each county and city to adopt a comprehensive, long-term general plan for its physical development. Each plan must contain, inter alia, a statement of policies and nine elements: land use, circulation, housing, conservation, open space, seismic safety, noise, scenic highway, and public safety. (§ 65302.) ■ Under state law, virtually any local decision affecting land use and development must be consistent with the applicable general plan and its elements. (See *Resource Defense Fund* v. *County of Santa Cruz* (1982) 133 Cal.App.3d 800, 806 [184 Cal.Rptr. 371].) Article 6 (§ 65350 et seq.) provides for the manner of preparation, adoption and amendment of the general plan, of which the housing element (§ 65589.5), challenged by plaintiffs, is but one part. In section 65358, the Legislature recognized the necessity of periodic amendments to all or part of the general plan to conform to current standards, and it provided for extensions of time to accomplish this in section 65361.

Section 65361, subdivision (b)(3) requires the town to prepare a set of proposed policies and procedures ensuring that any application for a proposed development or building permit "will be consistent with the *general plan proposal being considered or studied.*" (Italics added.) The section further provides: "(c) The [D]irector [of OPR] may impose any conditions on extensions of time granted that the director deems necessary to ensure compliance with the purposes and intent of this title. Those conditions shall apply only to those parts of the general plan for which the extension has been granted . . . ." While the extension is in effect, the town is exempt from the requirement "that its decisions be consistent with those portions of the general plan for which an extension has been granted. However,

development approvals shall be consistent with the conditions imposed by the director pursuant to subdivision (c) and any element or elements that have been adopted and for which an extension of time is not sought." (§ 65361, subd. (d).)

These article 6 statutes effectively suspend the provisions of the existing general plan under review to ensure that any proposed development be consistent with the "draft" general plan being considered. The same conclusion was reached in *Resource Defense Fund, supra,* which characterized former section 65302.6, the predecessor to section 65361, as follows: "No land development may proceed unless it conforms to a valid general plan. However, an exception exists, and development may be approved during an extension under [former] section 65302.6 so long as that development conforms with both the existing general plan and the proposed revision." (133 Cal.App.3d at p. 812.)

This interpretation has the dual effect of (1) protecting the town from legal challenges to proposed land uses during revisions of the general plan, and (2) furthering the goals and policies of the general plan being drafted. This is what the director authorized the Town of Tiburon to do in his extension letter, and the town followed this procedure.

Plaintiffs' claim, that their application must be reviewed against the existing general plan, would read these provisions out of the statute. By construing the phrase "applicable general plan" to refer, in this case, to the proposed or "draft" general plan, we give effect to both statutes (§§ 65361, 65589.5). Otherwise, we would require the town to approve a development proposal based upon an abated or suspended general plan. This result would undermine the expressed legislative intent to encourage periodic review of the community's changing conditions and circumstances. (See, e.g., § 65588, subd. (b).)

II-III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV

*Disposition*

The judgments denying the petition for writ of administrative mandamus and the request for declaratory relief are affirmed. Pursuant to the

*See footnote, *ante,* page 388.

nonpublished portion of our opinion, the judgment dismissing count seven alleging inverse condemnation and count eight alleging unreasonable pre-condemnation activity is reversed. The matter is remanded to the trial court to allow plaintiffs an opportunity to amend their complaint for inverse condemnation. The parties are to bear their own costs on appeal.

King, J., and Haning, J., concurred.

Appellants' petition for review by the Supreme Court was denied January 15, 1992.