[Civ. No. 7511. Fifth Dist. Dec. 7, 1983.]

GUARDIANS OF TURLOCK'S INTEGRITY et al.,
Plaintiffs and Appellants, v.
TURLOCK CITY COUNCIL et al., Defendants and Respondents;
CARGILL, INC., et al., Real Parties in Interest and Respondents.

586

**588**

COUNSEL

Douglas H. Drake for Plaintiffs and Appellants.

McDonough, Holland & Allen, William L. Owen and Sabina D. Gilbert for Defendants and Respondents.

Triebsch & Frampton, Richard K. Frampton, Mitchell & Vance and William R. Mitchell for Real Parties in Interest and Respondents.

OPINION

**ANDREEN, J.**—Plaintiffs Guardians of Turlock's Integrity, an unincorporated association, Robert N. Trevallee (Trevallee) and others (hereinafter collectively referred to as plaintiffs) filed their petition for writ of mandate and complaint for declaratory and injunctive relief in the Stanislaus County Superior Court, naming as defendants the Turlock City Council (City Council), the City of Turlock (Turlock), the Local Agency Formation Commission of Stanislaus County (LAFCO), and the Turlock Planning Commission (Planning Commission).

The matter proceeded to trial on an alternative writ of mandate which had commanded the defendants to set aside their decisions approving a prezon-

ing application and final environmental impact report (EIR) of real party in interest Cargill, Inc. (Cargill),[1] or show cause at a specified date why they had not done so. The court found against plaintiffs as to all contentions except the failure of the final EIR to adequately address comments made about noise factors related to the project at issue. The decision awarded plaintiffs' attorney fees of $5,000 plus $3,813.13 in costs, to be paid by Turlock. Judgment issuing a peremptory writ of mandate followed on August 16, 1982, commanding defendants to set aside their decisions approving the final EIR and approving of the rezoning application and enjoining further proceedings until a final EIR adequately responded to the noise factors set forth in the previously filed decision of the court.

## I. Background

### A. Facts

Following abandonment of an application for prezoning of a 79-acre parcel in contemplation of annexation by Turlock, two applications were submitted. The one under review was numbered application 81-02. It was a planned development involving only parcels 8 and 9 on appendix A,[2] plus a private driveway to be carved out of a third parcel; all property involved in this application was owned by the Baptistas, although the applicant was Cargill. A different application was subsequently filed requesting a zoning change from agricultural to "M-1 Industrial" as to the remaining parcels encompassed in the earlier application and not included in application 81-02.[3] Application 81-02 (hereinafter Cargill Project) involved construction of a soybean processing plant, as had the abandoned application.

On February 2, 1981, Dan Avila (Avila), a city planner employed by Turlock, caused a notice of preparation of a draft EIR regarding the Cargill Project to be sent to various agencies[4] including the state clearing house, a unit of the Governor's Office of Planning and Research (OPR). Sometime

---

[1]Cargill, Inc., Louis and Delores Baptista doing business as Cal Coast Manufacturing, and Cal Coast Manufacturing were identified as real parties in interest. Unless otherwise specified, all nonplaintiffs will be collectively referred to as defendants.

[2]The area in question is shown on respondents' exhibit H, Stanislaus County Assessor's Map 44, the relevant portion of which is reproduced on appendix A, attached. The assessor's parcels are identified by circled numbers within each parcel. The 79 acres involved in the applications discussed above are comprised of parcels 7, 8, 9 and 12, owned by the Baptistas, parcel 6, owned by John Sarhad et al., and parcel 11, owned by A. T. B. Packing Company. (The cross-hatches relate to a witness' testimony of a green belt.)

[3]Although plaintiffs attacked the two applications as "piecemeal development" below, no issue concerning this is made on appeal.

[4]The notice of preparation was sent to LAFCO, SAAG (Stanislaus Area Association of Governments), the Stanislaus County clerk, the county air polution control, and the state clearing house.

subsequent to the distribution of the notice of preparation, planner Avila received a telephone call from someone in OPR.[5] Avila testified that the caller from OPR told him that that office was not interested in seeing copies of the Cargill Project draft EIR, and Avila understood this to mean that the project would not be subject to statewide review.

A notice of completion of the draft EIR with respect to the Cargill Project was filed by the city on July 28, 1981. On October 20, 1981, prompted by a complaint made by plaintiff Trevallee, Heidi West of the OPR called Linda DeLozier, Avila's secretary, and asked that 10 copies of the Cargill Project draft EIR be sent to the state clearing house. On November 2, 1981, because no copies of the draft EIR had been received, Ms. West telephoned Avila. Avila informed West that the Cargill Project would be the subject of a Planning Commission hearing[6] in seven days, and that he therefore did not have enough time for the draft EIR to undergo the normal forty-five-day statewide review process. Somehow, Avila and West agreed that if two copies of the draft EIR were sent to the state clearing house, West would see that interested state agencies would be given the copies and would thereby have an opportunity to make verbal comments on the EIR within the seven days prior to the scheduled hearing on the Cargill Project.

Avila could not recall whether West told him in this telephone conversation that the seven-day review by two state agencies would replace the normal forty-five-day review process. West testified that statewide review was never discussed in that conversation—that the seven-day review and verbal comment plan was done only so that Turlock would have the benefit of state agency input at the scheduled hearing on the Cargill Project. West stated that no project had ever been granted a review period of less than 30 days, and that her office required written applications for any shortening of the 45-day review process. It was West's opinion that Turlock had not complied with statewide review procedures, and she informed Avila of this in a letter dated November 23, 1981.

Copies of the Cargill draft EIR were delivered to the Air Resources Board and to the Office of Noise Control; the former agency prepared comments but never communicated them to the city because other priorities intervened during the seven-day deadline period.

Copies of the draft EIR were distributed to various local agencies and persons, including LAFCO and plaintiff Trevallee. Comments on the draft

[5]Avila originally testified that his first telephone contact with the OPR was a July 28, 1981, conversation with Heidi West. After some intervening objections and questions, Avila stated that the telephone contact with OPR had occurred in March 1981.

[6]The actual hearing scheduled was a City Council proceeding.

EIR, and the city's responses to those comments, were collected in an addendum, and copies of this addendum were distributed to the same agencies and persons who received copies of the draft EIR.

The final EIR, containing comments on the draft EIR and responses to those comments, was considered at a meeting of the City Council on November 10, 1981. At that meeting, planner Avila represented to the City Council that the state clearing house had determined that the Cargill Project was exempt from statewide review—not mentioning any shortened seven-day review period. By a vote of three to two, the City Council passed a resolution certifying that the final EIR on the Cargill Project had been completed in compliance with the California Environmental Quality Act (CEQA), and approving the application for the Cargill Project with certain conditions. On November 24, 1981, by a vote of four to one, the City Council enacted Ordinance No. 485-CS, changing the zoning for the land included in the Cargill Project from "County A-2-10 (Exclusive Agricultural 10-Acre Minimum)" to "P-D (92) (Planned Development)."

## B. TURLOCK'S GENERAL PLAN

Turlock had adopted a general plan (Gov. Code, § 65000 et seq.) in 1975, which did not contain the statutorily mandated noise or scenic highways elements. (Gov. Code, § 65302, subds. (g) and (h).) The city contracted with consultants to update the general plan. By March 1982 the consultants had prepared a proposed revised general plan.

In late January or early February 1982, Turlock sought an extension of time to complete its revision of the general plan with OPR. Turlock subsequently received a letter from OPR dated February 1, 1982, extending until February 1, 1983, the time for adoption of certain elements of the general plan. The letter provided, inter alia, that Turlock was granted immunity from lawsuits raising the adequacy of general plan elements, effective only for applications filed after the effective date of the extension.

In their petition for writ of mandate etc., earlier mentioned and filed on December 8, 1981, plaintiffs alleged eight causes of action: (first cause of action) the Turlock General Plan was invalid as not containing certain mandatory elements; (second cause of action) the Cargill Project was inconsistent with the Turlock General Plan; (third cause of action) defendants failed to comply with statutory procedures for submission of the draft EIR on the Cargill Project to the state clearing house for statewide review; (fourth cause of action) the responses in the final EIR to comments made on the draft EIR were inadequate and copies of the notice of preparation of the draft EIR were not sent to all applicable federal and state agencies; (fifth

cause of action) the plant site comprised more than 40 acres, but 10 copies of the draft EIR were not sent to the state clearing house as required by CEQA; (sixth cause of action) the defendants failed to send the notice of preparation to certain federal agencies involved in funding the project; (seventh cause of action) LAFCO action was prevented by an insufficiency in the EIR; and (eighth cause of action) plaintiffs were entitled to attorney fees. The petition sought mandamus compelling defendants to set aside their decisions as to the Cargill Project, and injunctive relief prohibiting defendants from proceeding on these matters until a complete and sufficient EIR was prepared and approved.

## C. Trial Court's Rulings

As noted earlier, the trial court ruled against plaintiffs[7] on every issue except the adequacy of the final EIR's response to comments made about the noise to be generated by the Cargill Project. The judgment commanded defendants to set aside their decisions as to the "application of Cargill," and enjoined them from further proceedings until such time as a final EIR adequately responded to the comments concerning the noise as set forth in the court's decision issued June 17, 1981. Plaintiffs were awarded $5,000 attorney fees and $3,813.13 in costs. The trial court provided no information about how the award of fees was calculated. Plaintiffs' counsel had submitted a memorandum seeking $17,112 in attorney fees.

## II. General Plan

### A. Noise Element

Plaintiffs contend that the general plan of the City of Turlock is illegal because it does not contain all the mandatory elements of a general plan.[8]

Government Code section 65302 outlines the elements that shall be included in a general plan. There are nine mandatory elements. Testimony at trial was limited, but established that the general plan of Turlock lacked a noise element. (Gov. Code, § 65302, subd. (g).)

■ Does the lack of a mandatory element in a general plan invalidate the entire plan? Yes, if the missing element was directly involved in the projects being reviewed. (*Save El Toro Assn.* v. *Days* (1977) 74 Cal.App.3d

---

[7]LAFCO had indicated at the trial that it considered the final EIR to be inadequate and was aligned in interest with plaintiffs. LAFCO has not participated in this appeal.

[8]We do not discuss the lack of a scenic highway element (Gov. Code, § 65302, subd. (h)) because it has no application to the project.

64 [141 Cal.Rptr. 282]; *Friends of "B" Street* v. *City of Hayward* (1980) 106 Cal.App.3d 988 [165 Cal.Rptr. 514].) ■ Absence of relevant elements in a general plan precludes enactment of zoning ordinances and the like. (*Resource Defense Fund* v. *County of Santa Cruz* (1982) 133 Cal.App.3d 800, 806 [184 Cal.Rptr. 371].) ■ If a plan does not reflect substantial compliance with the mandatory elements the responsible agency has failed to perform an act which the law specially enjoins. (*Camp* v. *Board of Supervisors* (1981) 123 Cal.App.3d 334, 348 [176 Cal.Rptr. 620].)

The court below found that Turlock made inadequate responses to comments made in response to the EIR respecting noise and ordered Turlock to set aside its decisions made in respect to the prezoning application and annexation. It enjoined further proceedings until a final EIR adequately responds to the noise factors. Although this affords plaintiffs some relief, it does not address the fact that the EIR was prepared in a vacuum. Noise levels acceptable in an industrial zone would be intolerable in a residential area. Noise levels may vary between industrial zones. Unless the general plan sets noise guidelines, an EIR addressing noise issues lacks meaning. The lack of a noise element in the general plan resulted in a subversion of CEQA, because a necessary foundation as to the level of acceptable noise made the EIR deficient.

The trial court did not address this issue, because it held that the general plan was validated by the OPR extension letter; it found the first cause of action moot because an OPR extension letter had been granted.

## B. OPR Extension Letter

■ Upon a proper request the director of planning and research grants an extension of time to a governmental body to prepare and adopt one or more general plan elements. (Gov. Code, § 65302.6, subd. (a).) The governmental body is allowed to proceed without a complete general plan during the extension period in compliance with Government Code section 65302.6, subdivision (d).[9]

The OPR extension letter was granted after the City Council had approved the EIR and had prezoned the property. An OPR extension letter which

---

[9]Government Code section 65302.6, subdivision (d) provides: "During the extension of time specified in this section, the city or county is not subject to the requirement that a complete and adequate general plan be adopted or the time within which it must be adopted or the requirement that the land use be compatible or consistent with the general plan as required by Section 65302, 65563, 65567, 65860, 65910, or 66473.5, or subdivision (a) or (b) of Section 66474, of the Government Code. The provisions of this section shall apply only to those elements for which an extension has been granted. The city or county shall comply with all state laws and shall base all required findings on the existing adopted elements."

exempts approvals from the requirement that land use be compatible or consistent with the general plan applies only to approvals which occur during the period of extension. (*Resource Defense Fund* v. *County of Santa Cruz, supra,* 133 Cal.App.3d 800, 812.)

The defendants assert that the issue is moot, since had the trial court sent the matter back the OPR extension letter would have been extant, obviating the need for a noise element. This assumes too much, for it implies that the City Council would act before the expiration of the OPR letter. There is a complete failure of proof on this issue. On remand, Turlock shall be ordered to approve the EIR and prezoning only if they are consistent with the noise element in the general plan at the time of the city action.[10]

### III. STATEWIDE REVIEW

Plaintiffs assert that the trial court erred in finding that the Cargill Project occupied less than 40 acres of land, thus removing it from the category of projects required to be submitted to statewide review. California Administrative Code, title 14, former section 15161.6 (now § 15206) provided, inter alia, that a project would be deemed to have statewide, regional or areawide significance if it were a proposed industrial, manufacturing, or processing plant "occupying more than 40 acres of land."

The property owned by the Baptistas and on which the soybean plant would be built, including the two parcels and a private driveway over a third parcel, totaled 39.568 acres. At least initially, the plant building, parking lot and driveways were to be located on the northerly 25 acres of the property, with the balance maintained as an agricultural buffer. We reject the argument that the "plant" includes only that portion of the 39-plus acres which are to be paved or covered with buildings. Modern industrial facilities often include landscaping and screening for esthetic enhancement or to

---

[10]We note that the OPR extension letter issued to Turlock specified that its terms operated "only for applications filed after the effective date of the extension." The letter purported to be effective "from receipt," and was dated February 1, 1982.

Government Code section 65302.6, subdivision (f) provides, inter alia, that one additional extension, not to exceed one year, may be granted to a city already operating under an extension pursuant to that section. If, as suggested by counsel at oral argument, another extension has been issued to Turlock, it cannot, by the express terms of the Government Code, protect the city beyond February 1, 1984. Defendants produced evidence at the time of trial, in April 1982, that Turlock had made significant progress toward adopting a revised general plan; that process may have reached fruition by now. For these reasons, and because the parties have not addressed the issue, we do not consider it necessary to decide whether the language of the OPR extension letter, precluding its protection from applications "filed" before its effective date, would *necessitate* adoption of a new, valid general plan before the Cargill Project could be found consistent. If, when the City Council reconsiders the consistency of the project, it is still operating under an OPR extension, subsequent judicial review may be necessary to delineate the proper scope of that extension.

ameliorate unsightly features. They are as much a part of the "plant" as is a parking lot.

Since the project land was to be annexed to Turlock, certain portions of neighboring roads had to be included in the proposed annexation so that islands of unannexed roadway would not be left outside the new city limits. In addition, a portion of a "right-of-way" for railroad tracks was included in the area to be annexed. These additions increased the area to be annexed to the City of Turlock, as described in the notice of hearing and in the prezoning application, to over 41 acres.

The addition of Ruble Road to the south adds little to the utility of the facility, since access is off Tegner Road, which is on the east. However, the addition of the railroad right-of-way is different, for the railroad is a vital part of the operation of the factory. Thirty feet of the railroad right-of-way was included in the prezoning application. If that square footage is added to the 39.568 acres of the Baptista property, it totals more than 40 acres. The computation is a mathematical one and is taken from uncontradicted and unchallenged testimony at the hearing before the trial court. The two parcels of land, numbered 8 and 9 on the assessor's map (attached as appendix A) measure 1,289.82 feet from east to west. That distance multiplied by 30 feet for the railroad right-of-way totals 38,694.6 square feet, which is .888 acres. When that figure is added to the 39.568 acres, the total land area is 40.456 acres.

We have been unable to find any case, and the parties have produced none, interpreting the relevant Administrative Code section. Defendants suggest that the issue is one of fact, and can be resolved by applying the substantial evidence test to the trial court's "factual" finding. ■ On the contrary, since determination of whether the Cargill Project involved more than 40 acres involves application of regulatory language to undisputed facts, the issue is one of law, and the appellate court is not bound by the findings made by the trial court. (*Neeley* v. *Board of Retirement* (1974) 36 Cal.App.3d 815, 819 [111 Cal.Rptr. 841]; citing *Neal* v. *State of California* (1960) 55 Cal.2d 11, 17 [9 Cal.Rptr. 607, 357 P.2d 839].)

■ In construing a statute, the fundamental rule is that the appellate court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658 [147 Cal.Rptr. 359, 580 P.2d 1155].) ■ "Generally, the same rules of construction and interpretation which apply to statutes govern the construction and interpretation of rules and regulations of administrative agencies." (*Cal. Drive-In Restaurant Assn.* v. *Clark* (1943) 22 Cal.2d 287, 292 [140 Cal.Rptr. 657, 147 A.L.R.

1028].) In determining such intent the court first looks to the words themselves for the answer. (*Palos Verdes Faculty Assn., supra,* 21 Cal.3d at p. 658.) However, the relevant language in the present case—"occupying more than 40 acres of land"—does not readily provide a definitive answer to the issue posed: whether the measure of statewide interest should be gauged only by the lands specifically set aside for the plant site, or should it be the entire affected area, including lands brought within the proposal to facilitate annexation?

It may be argued that the word "plant" refers specifically to land devoted to the improvement. The incorporation of the railroad right-of-way on the northern edge of the Baptista property and the inclusion of the road on the south so that there would be no county islands does not expand the size of the "plant" in that usage of the term.

On the other hand, if when considering the 40-acre threshold requirement, agencies and courts are to exclude contiguous roads and rights-of-way, parcels of land would generally have to contain substantially more than 40 acres to qualify as being of statewide significance. This is because roadways are commonly located contiguous to parcels as large as 40 acres, especially in industrial subdivisions. Usually, the roadways are placed on the centerline between parcels, borrowing a strip of land from either side. If roadways are to be excluded, 40-acre parcels would almost always contain about 39 net acres. Such an application of the rule would lead to ridiculous and unintended results. ■ For purposes of California Administrative Code, title 14, section 15206, a plant which occupies a parcel of 39 acres, excluding contiguous rights-of-way and roadways, is deemed to occupy more than 40 acres if the area of such rights-of-way and roadways, when added to such parcel, increases the area under consideration to more than 40 acres.

"[T]he Legislature intended CEQA 'to be interpreted in such manner as to afford the *fullest possible protection* to the environment within the reasonable scope of the statutory language.'" (*Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 263, 274 [118 Cal.Rptr. 249, 529 P.2d 1017].) An interpretation of the 40-acre standard which made statewide review *less* likely would directly conflict with the mandate of fullest possible protection identified by *Bozung.*

It is reasonable to apply the 40-acre standard to the entire affected area of a project, including public roads and railroad rights-of-way, since the movement of trucks, trains and other vehicles has potential statewide implications as to air pollution, traffic patterns and related effects on the infrastructure supporting such a project.

For these reasons we conclude that the trial court was in error when it ruled that the Cargill Project involved less than 40 acres of land and did not require statewide review.

## IV. COMPLIANCE WITH STATEWIDE REVIEW

The trial court did not make any findings as to the adequacy of Turlock's compliance with statewide review procedures, since it ruled that compliance for such procedures was unnecessary. California Administrative Code, title 14, former section 15161.5 (now § 15205) provided, inter alia, that not less than 10 copies of a draft EIR subject to statewide review be sent to the state clearing house, and that the normal review period for such draft EIRs be 45 days. Evidence at trial established that only two copies of the Cargill Project draft EIR were sent to the state clearing house, and that the period available for review was at most eight days. However, there was conflicting evidence as to whether planner Avila received a telephone call from state clearing house telling him that no EIR should be sent to that agency, and as to whether Heidi West or Steve Williamson of the OPR agreed that the Cargill EIR should be permitted a shortened review period. Although the parties on appeal vigorously argue that the procedures for statewide review were or were not complied with, they offer no justification for having the appellate court, which did not hear the testimony or view the witnesses, resolve the conflicting issues of fact. The matter must be remanded to the trial court with directions to make appropriate findings of fact and conclusions of law with regard to whether Turlock complied with the statutory procedures for statewide review of the draft EIR.

## V. CONSISTENCY WITH GENERAL PLAN—STANDARD OF REVIEW

Judicial inquiry in this case is limited to determining whether the City Council proceeded as required by law and whether its determinations were supported by substantial evidence. (Pub. Resources Code, §§ 21168, 21168.5.) Our scope of review is identical with that of the trial court—a determination of whether substantial evidence supports the City Council's actions. (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 915-916 [80 Cal.Rptr. 89, 458 P.2d 33]; *Davis* v. *California Coastal Zone Conservation Com.* (1976) 57 Cal.App.3d 700, 708-709 [129 Cal.Rptr. 417].)

Plaintiffs contend that the trial court should have applied its independent judgment, since their fundamental, vested rights were involved. The law is otherwise. (*Markley* v. *City Council* (1982) 131 Cal.App.3d 656, 665-667 [182 Cal.Rptr. 659].)

The defendants contend that as to the second cause of action—consistency of the EIR and the project with the general plan—the test is limited to a determination that the City Council's action was arbitrary and capricious, since prezoning is a legislative act. They cite *Arnel Development Co.* v. *City of Costa Mesa* (1980) 28 Cal.3d 511 [169 Cal.Rptr. 904, 620 P.2d 565]. In *Arnel,* a neighborhood association fearing the placement of apartments on undeveloped land used the initiative process to zone the land single-family residential. (*Id.,* at pp. 513-514.) The developer contended that the zoning was adjudicative in nature, and could not be passed by initiative. (*Id.,* at p. 514.) Our Supreme Court held that zoning was legislative in nature and therefore subject to the initiative process. (*Id.,* at pp. 524-525.) The court noted on page 522 that a zoning ordinance is reviewable by ordinary mandamus. (Code Civ. Proc., § 1084.) The court did not discuss judicial review of zoning in reference to CEQA.

We need not determine whether the applicable standard of review of the consistency of the Cargill Project with the Turlock general plan should be according to the substantial evidence test or the broader "arbitrary and capricious" test applicable to quasi-legislative actions, since we have already held that Turlock's general plan was invalid for lack of a noise element when the City Council acted upon the subject project. Regardless of standard of review, a proposed project cannot be consistent with an invalid general plan. ▮ However, for the guidance of the trial court if this matter should come before it again, we note that while zoning is unquestionably a legislative act, "a variety of administrative land use decisions, including the granting of a variance [citation], the granting of a use permit [citation], and the approval of a subdivision map [citation]," have been classified as adjudicative, and thus reviewable by the substantial evidence test. (*Arnel, supra,* at pp. 518-519, fn. 8; *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 514-518 [113 Cal.Rptr. 836, 522 P.2d 12].) We find that the decision as to whether a particular project is consistent with a general plan involves "the application of standards . . . to individual parcels" which renders that decision adjudicatory, and thus subject to the substantial evidence test on judicial review. (*Arnel, supra,* 28 Cal.3d at p. 518, fn. 8.)

Since we have held that the general plan of Turlock was invalid for lack of a noise element, and that the trial court was in error in ruling that the existence of the OPR extension letter rendered that invalidity moot, the City Council will have to consider the consistency of the project to the general plan after the lack of a noise element has been remedied. Since the application for the Cargill Project was filed prior to the effective period of the OPR extension letter, and was thus arguably not within that letter's protec-

tion, the lack of a noise element may have to be remedied by enacting a valid general plan containing such an element.[11] If, after Turlock has enacted a valid general plan and the City Council has found that the project is consistent with that valid plan, further judicial review is sought, that review must be conducted using the substantial evidence standard as set forth herein.

## VI. MITIGATION OF CUMULATIVE EFFECTS

 Points that are not properly raised in the trial court are ordinarily waived on appeal. (*Rice* v. *Southern Pacific Co.* (1967) 247 Cal.App.2d 701, 710-711 [55 Cal.Rptr. 840]; see 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 276, pp. 4264-4265.)

 To allow a litigant to change his theory on appeal is not only unfair to the court but unjust to the opposing litigant. The theory upon which a case is tried must be adhered to on appeal. (*Ernst* v. *Searle* (1933) 218 Cal. 233, 240-241 [22 P.2d 715]; see 6 Witkin, *op. cit. supra,* § 281, pp. 4269-4271.)

Plaintiffs did not raise the argument that the EIR failed to discuss and mitigate cumulative effects at the trial court except arguably as to the cumulative effects of project-created noise. The plaintiffs have already won on the noise element and are not appealing that portion of the judgment.

The point, not having been raised below, is waived.

## VII. RESPONSES TO COMMENTS

Except for the comments relating to the noise to be generated by the Cargill Project, the trial court ruled that Turlock had adequately responded to all comments made with respect to the draft EIR. No appeal has been taken with regard to the trial court's rulings relating to noise.

Without identifying the sources of the comments or providing transcript references to the comments or the allegedly inadequate responses, plaintiffs assert that inadequate responses were contained in the final EIR as to comments made regarding (1) truck and train traffic, (2) auto traffic, (3) the risk of upset of a propane system to be used by the soybean plant, (4) the effect of the soybean plant's operations on the pecan trees grown by certain of plaintiffs and (5) air pollution. Defendants contend that the final EIR con-

---

[11]See footnote 10, above.

tained adequate responses, or measures adopted in mitigation, as to each of the challenged comment areas.

We are unwilling to analyze the challenged comments and responses, due to the complete failure of plaintiffs' brief on appeal to identify, with citations to the record, the sources of relevant comments on the particular responses alleged to be inadequate. ■ As noted earlier, "This court is not required to search the record for error. . . .' ". . . It is incumbent upon the appellants to state fully, *with transcript references,* the evidence which is claimed to be insufficient to support the findings." ' [Citation.]" (*Cleary* v. *County of Stanislaus* (1981) 118 Cal.App.3d 348, 360 [173 Cal.Rptr. 390], italics added; Cal. Rules of Court, rule 15(a).) Plaintiffs' summary presentation of alleged inadequacies, completely devoid of specific references to the record, would require a painstaking combing of the somewhat ill-organized final EIR and possibly other portions of the voluminous record, which is not our duty.

## VIII. NOTICE TO ENVIRONMENTAL PROTECTION AGENCY

■ California Administrative Code, title 14, former section 15066, subdivision (c) (now § 15082, subd. (a)) provided that a notice of preparation of a draft EIR be sent to "every federal agency involved in approving or funding the project." No copy of the Cargill draft EIR notice of preparation was sent to the Environmental Protection Agency (EPA).

A party must present all legitimate issues before an administrative agency and cannot attack an irregularity for the first time in the superior court on review of the administrative agency's action. (*City of Walnut Creek* v. *County of Contra Costa* (1980) 101 Cal.App.3d 1012, 1019-1020 [162 Cal.Rptr. 224]; *Running Fence Corp.* v. *Superior Court* (1975) 51 Cal.App.3d 400, 429 [124 Cal.Rptr. 339].) It appears the plaintiffs were aware of the involvement of the EPA in approving the Cargill Project for federal purposes during the administrative proceedings, yet did not raise the issue of defect in the notice of preparation procedure until review was sought in court.

The plaintiffs have waived the failure to notify the EPA by not bringing such failure to the attention of the administrative bodies reviewing the project.

## IX. ATTORNEY FEES

Plaintiffs contend that attorney fees should have been awarded in the full amount requested—$17,112—rather than the $5,000 awarded by the court.

We are inclined to hold that the matter is not reviewable. The trial court may, or it may not, have followed the guidelines set forth in *Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d 311 [193 Cal.Rptr. 900, 667 P.2d 704]. The trial court's "Decision" did not state the basis for its award. If the plaintiffs chose to treat this as the statement of decision (Code Civ. Proc., § 632), it was incumbent upon them to bring to the attention of the trial court any ambiguity. (Code Civ. Proc., § 634.)

However, the extent of a plaintiff's success is a crucial factor in determining the amount of attorney fees to be awarded under Code of Civil Procedure section 1021.5.[12] (*Daniels* v. *McKinney* (1983) 146 Cal.App.3d 42, 55 [193 Cal.Rptr. 842].) " 'Where the lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the . . . court did not adopt each contention raised. . . .' [Citation.]" (*Ibid.*, fn. omitted, italics omitted.)

We have determined that plaintiffs should have prevailed in the trial court as to the invalidity of the Turlock general plan for lack of a noise element, and as to the necessity for statewide review arising from the project's more than 40 acres. We have also found that the trial court used the wrong standard when ruling on the claim that the project was inconsistent with the general plan. Plaintiffs may additionally prevail after the trial court determines, on remand, whether the necessity for statewide review was waived. Therefore, even assuming that the trial court properly applied the analysis of *Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d 311, and *Daniels* v. *McKinney, supra,* 146 Cal.App.3d 42, in its initial award of attorney fees, it must reevaluate that award on remand in light of plaintiffs' success on appeal and afterward. The trial court must also award plaintiffs attorney fees for the time spent in vindicating their claims on appeal. (*Daniels* v. *McKinney, supra,* 146 Cal.App.3d at p. 55.) For these reasons, it is unnecessary to pass upon plaintiffs' present claim that the award of fees was improper.

## X. CONCLUSION

The judgment appealed from is reversed insofar as it purported to find that the issue of the validity of the Turlock general plan was moot, and that

---

[12]Plaintiffs asserted a right to attorney fees under both the "private attorney general" doctrine codified in Code of Civil Procedure section 1021.5 and under the "substantial benefit" doctrine. We note that entitlement to fees under one theory is independent of entitlement under the other (*Friends of "B" Street* v. *City of Hayward, supra,* 106 Cal.App.3d at p. 994), and thus do not regard it as significant that the trial court did not indicate which doctrine it was relying upon in awarding fees. On remand, the trial court should award attorney fees consistent with this opinion and the applicable law.

the Cargill Project was consistent with the general plan. The judgment is further reversed insofar as it purported to find that the Cargill Project was not subject to statewide review because it involved a plant occupying less than 40 acres. The trial court is ordered to issue a writ of mandate commanding Turlock to set aside its approval of the final EIR and the prezoning application and enjoining approval of said EIR and prezoning unless such approval is consistent with a valid general plan existing at the time of city action. The cause is remanded to the trial court for a determination of whether OPR waived statewide review and, if so, whether such waiver was legally operative. If the determination of either issue is in the negative, the trial court shall further issue a writ of mandate commanding Turlock to set aside its approval of the final EIR and prezoning application and enjoining approval of said EIR and prezoning until the requirements of statewide review are met.

The judgment appealed from is further reversed insofar as it purported to award attorney fees. The cause is remanded to the trial court for a determination of the proper amount of attorney fees to be awarded applicable to trial of the present matter, including proceedings on remand, and applicable to the proceedings on appeal, consistent with this opinion.

In all other respects, the judgment is affirmed.

Hanson (P. D.), Acting P. J., and Gallagher, J.,* concurred.

A petition for a rehearing was denied January 6, 1984, and the opinion was modified to read as printed above. The petition of defendants and respondents for a hearing by the Supreme Court was denied March 14, 1984.

---

*Assigned by the Chairperson of the Judicial Council.