[No. B009327. Second Dist., Div. Seven. May 8, 1986.]

RICHARD M. MUSQUIZ, Plaintiff and Appellant, v.
CITY OF HUNTINGTON PARK et al., Defendants and Respondents.

COUNSEL

Cecil E. Ricks, Jr., for Plaintiff and Appellant.

Elwayne E. Smith, City Attorney, for Defendants and Respondents.

OPINION

JOHNSON, J.—The appellant, Musquiz, appeals from an order of the trial court denying his petition for alternative or peremptory writ of mandate and damages brought pursuant to California Code of Civil Procedure section 1094.5. Musquiz raises three central issues on appeal. First, did the respondent, Huntington Park City Council, exceed the proper scope of review during its examination of the findings and recommendations of the city's civil service commission? Second, was the council's decision supported by its findings? Third, did the trial court apply the appropriate standard of review in assessing the propriety of the council's decision? After examining the above issues, we conclude no errors occurred. We affirm the trial court's decision.

### STATEMENT OF FACTS AND PROCEEDINGS BELOW

On July 30, 1983, Musquiz, a police officer, was called to a Sav-on Drug Store to pick up a suspect who had been apprehended at the store for

shoplifting. The suspect had attempted to steal a bottle of liquor and was also presumed to be under the influence of some substance. The store's security guard who had apprehended the suspect was with the suspect in the back of the store. The suspect was handcuffed. Upon Musquiz's arrival, the security guard informed the officer of the circumstances surrounding the incident. The officer recognized the suspect.

The suspect became angry upon the officer's arrival since the security guard had told him he would not call the police. When the security guard attempted to place the bottle in the suspect's lap so he could take a picture of the suspect with the evidence, the suspect kicked the guard.

After the security guard completed his paperwork, Musquiz and the guard began to take the suspect to the officer's car. The guard walked in front of the suspect, with the officer beside the suspect. The suspect was still handcuffed. As they proceeded, the suspect crashed into some boxes of merchandise. The guard and the officer helped the suspect up. The suspect was having a difficult time walking. To assist the suspect, the guard walked on his right side and the officer on his left. Soon thereafter, the suspect kicked the guard again, hurting him. The suspect then turned around and spit at the officer. The spit hit him directly in the face, with some going into the officer's mouth.

Musquiz told the suspect never to do that again. Musquiz then struck the suspect in the face with his fist at least two to three times. The suspect started leaning forward as if he were attempting to butt the officer with his head. The officer hit the suspect again. The suspect fell backwards onto the concrete floor.

Musquiz continued to yell at the suspect. He then kicked the suspect three to five times.[1] The guard walked up to the suspect and noticed some blood coming from the back of his head. He advised the officer to call the paramedics. The officer called the paramedics as well as his field sergeant.

Before the paramedics arrived, one of the store employees placed some cotton on the suspect's head to stop the bleeding. When the paramedics arrived, the suspect was lying face down and appeared to be unconscious.

---

[1]The security guard testified he could not determine exactly where the officer was kicking the suspect since prior to this aspect of the incident, he had gone to the back entrance to ask onlookers to leave. He observed the kicking as he was returning. A clerk who also observed the incident testified the officer kicked the suspect in the head five or six times. The clerk also testified the officer subsequently turned the suspect on his stomach, opened the suspect's legs, and hit him with his baton between the suspect's legs. The security guard did not see the officer take out his baton.

They discovered a lump or gash on the back of the suspect's head and his left cheek was swollen. They treated him at the store and then took him to the hospital.

The field sergeant arrived before the suspect was removed. He observed the suspect lying face down and some blood on the floor. The officer told the sergeant the suspect had spit at him and when he attempted to restrain the suspect, the suspect slipped and hit his head on the floor.

On August 17, 1983, Musquiz received a letter from the Huntington Park Chief of Police informing him he was being terminated at the end of the month. The discharge was based on the events of July 30 as well as two other incidents.

Musquiz appealed his discharge to the civil service commission. The commission received evidence including the testimony of the key participants and witnesses in the July incident. The commission rendered a decision on October 5, 1983. It concluded the evidence indicated the officer used excessive force and mistreated the suspect. However, the evidence was inconclusive as to the degree of force used. The commission also found the evidence was insufficient to establish the other charges against the officer. It concluded the punishment against the officer was too severe and recommended suspension without pay for two calendar months.

The city council reviewed the findings and recommendations of the commission. On November 23, 1983, it informed Musquiz it concurred with the findings of the commission that excessive force was used. However, it upheld the decision of the police chief to terminate the officer.

On February 17, 1984, Musquiz filed a petition for alternative or peremptory writ of mandate and damages contending the respondent had not proceeded in the manner required by law, the city council's decision was not supported by the findings, and the council's findings were not supported by the evidence.

On September 25, 1984, the trial court denied Musquiz's petition.

Musquiz filed a notice of appeal on November 1, 1984.

### I. THE CITY COUNCIL PROPERLY REVIEWED THE DECISION OF THE CIVIL SERVICE COMMISSION

Musquiz contends the city council exceeded its scope of review by reading the entire transcript of the proceeding conducted by the civil service

commission, thus treating the review as a de novo proceeding. He argues the council should have simply read the findings and recommendation of the commission and determined whether the police chief would still have recommended termination even though the commission only found sufficient evidence to establish one of the charges against Musquiz. We disagree.

Section 12 of Huntington Park Ordinance No. 1456 provides in relevant part: "The City Council shall review the findings and recommendations of the Civil Service Commission and may affirm, revoke, or modify the action taken, as in its judgment seems warranted, and the action taken by the City Council shall be final." We find it difficult to interpret this section in the limited manner Musquiz proposes. Indeed, we question how a council could be expected to meaningfully review the findings and recommendations of a commission without also examining the record upon which they are based. Musquiz in essence is asking us to interpret "review" simply to mean "read." Such an interpretation is unwarranted and would essentially make council review simply a perfunctory exercise. Moreover, had the council proceeded in the manner now urged by Musquiz, we strongly question whether its action would have withstood a court challenge.

Musquiz relies on *Jackson* v. *City of Pomona* (1979) 100 Cal.App.3d 438 [160 Cal.Rptr. 890] to support his contention. *Jackson*, however, is clearly distinguishable.

In *Jackson*, a police officer was informed he was going to be suspended from his duty as a police sergeant without pay for one month and demoted to the rank of senior patrolman due to alleged wrongdoing. A hearing officer was appointed at the request of the officer. The hearing officer determined the charges in support of termination were not substantiated by a preponderance of the evidence. However, the hearing officer found the officer had committed a gross error in professional judgment and proposed a one-month suspension. The city reviewed the decision, made additional findings, and added the discipline of demotion. The officer appealed this decision contending the city council based its decision upon findings contrary to those of the hearing officer without finding the examiner's decision was unsupported by substantial evidence.

The appellate court agreed with the police officer's contention. Pursuant to the Pomona code, the hearing officer had the authority to make a binding decision after hearing the disciplinary proceeding. Such a decision could only be overturned by the city council if the council found the decision was "not founded on substantial evidence." The city council did not make this

requisite finding in adding the additional discipline. Since the city council did not proceed in the manner required by law, the court reversed the decision. (*Jackson* v. *City of Pomona, supra,* 100 Cal.App.3d at pp. 448-451.)

In the case at bar, there is no similar provision governing the relationship between the civil service commission and the city council. Huntington Park Ordinance No. 1456, section 12 does not limit the council to a review by substantial evidence. We further note, even when the standard of review is substantial evidence, the reviewing body must examine the transcript and documentary evidence. (*Id.,* at p. 444.) Moreover, unlike *Jackson,* in the case before us the council concurred with the commission's factual findings but merely disagreed with the proposed discipline. This was perfectly in keeping with section 12.

## II. THE CITY COUNCIL PROPERLY DETERMINED MUSQUIZ'S CONDUCT JUSTIFIED DISCHARGE

■ Musquiz argues the council failed to determine whether Musquiz's conduct on July 30, 1983, constituted willful mistreatment of the prisoner and as such it did not proceed in the manner required by law.

On October 5, 1983, the civil service commission rendered its findings and recommended decision to the city council. It provided in relevant part: "In reference to charge 3: The evidence presented did indicate the use of excessive force and mistreatment of a prisoner. The evidence was inconclusive as to the degree of force used by the Officer in the Sav-on Drug Store incident of July 30, 1983." The commission found the officer's conduct violated rule 9.1, subsections (i), (*l*), and (m) of the Civil Service Rules and Regulations of the City of Huntington Park.[2]

---

[2] This rule provides in relevant part: "Disciplinary action may be taken for any good and sufficient cause. The nature and extent of the disciplinary action taken shall be commensurate with the offense, provided that the prior employment history of the employee may be considered in determining the action to be taken. Cause of disciplinary action shall include:
"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .
"(i) Discourteous treatment of the public or other employees, . . . .
"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .
"(1) Failure to abide by any condition of employment rule or regulation stipulated in the Civil Service Ordinance, the Personnel Rules, Department Rules and Regulations, or by formal action of the City Council or Commission.
"(m) Any other failure of good behavior or acts either during or outside of duty hours which are incompatible with or inimical to the public service."

On November 21, 1983, the council concurred with the commission's finding of excessive force but disapproved the commission's recommendation that only suspension without pay for two calendar months be imposed. The council determined termination was appropriate.

While it is true the police chief found the officer's actions on July 30, 1983, constituted "willful mistreatment of a prisoner," a violation of Huntington Park General Order Rules and Regulations, Item H, this was not the basis for disciplinary action taken by the commission or city council.[3] Moreover, while we agree there is no specific provision in the civil service rules and regulations which provides for discipline when excessive force has been used, the council could certainly properly find the use of excessive force in this context constituted violations of rule 9.1, subsections (i), (*l*), and (m). Most importantly, Musquiz failed to raise this challenge in the trial court below and cannot now raise it for the first time on appeal. (See *Fleming* v. *Safeco Ins. Co.* (1984) 160 Cal.App.3d 31, 43 [206 Cal.Rptr. 313]; *Guardians of Turlock's Integrity* v. *Turlock City Council* (1983) 149 Cal.App.3d 584, 599 [197 Cal.Rptr. 303].).

█ Musquiz also argues the findings of the city council were not supported by the weight of the evidence. We disagree.

The security guard testified as he and the officer were taking the suspect out to the officer's car, the suspect crashed into some boxes of merchandise. They picked the suspect up. Soon thereafter, the suspect kicked the guard in the leg and spit at the officer. The officer told the suspect something to the effect of, "You asshole. Don't you ever spit at me again." The officer then began striking the suspect. When the suspect began to lean forward as if he were going to ram the officer, the officer hit the suspect again, knocking him backwards onto the concrete floor. Even after the suspect was on the ground, the officer continued to yell at the suspect saying something to the effect of, "You bitch, don't you ever spit on me again." While the suspect was on the ground, the officer kicked the suspect a number of times.[4]

---

[3]We note the police chief also found the officer's actions on that day violated rule 9.1, subsection (*l*). Additionally, Huntington Park General Order Item G, cited by the police chief, is very similar in meaning to rule 9.1, subsection (m).

[4]We note the security guard's version of events was corroborated in key regards by a clerk who observed the incident. The clerk testified after the suspect spit at the officer, the officer hit him nine or ten times in the face. Thereupon, the officer and the security guard lowered the suspect to the floor and the officer kicked the suspect in the back of the head about five or six times. He did not observe the suspect attempting to charge the officer. The clerk then observed the officer turn the suspect on his stomach, open his legs, and hit him between the legs with his baton. The testimony by the paramedic and the field sergeant relating the injuries suffered by the suspect also corroborated this testimony.

We recognize Musquiz testified to a different version of the facts. He testified after the suspect spit at him, he struck him with a clenched fist in the face about two to three times spontaneously. When the suspect started charging towards the officer, the officer struck him again in the face. The suspect fell to the ground striking his head hard against the concrete and becoming unconscious. The officer attempted to revive the suspect. Receiving no response he called the paramedics. However, in light of the other testimony presented in this matter, it is apparent the weight of the evidence supports the council's decision.

## III. THE TRIAL COURT APPLIED THE APPROPRIATE STANDARD IN REVIEWING THE DECISION OF THE CITY COUNCIL

■ Musquiz contends the trial court failed to apply its independent judgment and consider the entire record in deciding whether to affirm the council's decision. However, this contention is totally unsupported. As the lower court stated when rendering its decision, "[I]f you go just by the findings of the commission, there is sufficient grounds for discharge. *But when you give an independent review, which I have gone completely through the transcript,* there is no question in my mind that substantial evidence that would require the discharge of this officer. This day and age cities just cannot have police officers who react this way to mistreatment by people whom they are apprehending and arresting." (Italics added.)

## IV. THE CITY COUNCIL'S DECISION IS SUPPORTED BY ITS FINDINGS

■ Musquiz contends the council's decision is not supported by its findings since the council only found one occasion of excessive use of force whereas the police chief's decision was based on two incidents of willful mistreatment of a prisoner. We reject this challenge. The council's finding of excessive use of force unquestionably provided cause for disciplinary action. It was within the province of the council to determine the appropriate punishment given the offense and taking into account the prior employment history of the employee. As discussed earlier, the city council has the power to review the findings and recommendations of the commission and to affirm, revoke, or modify the action taken as the council deems appropriate. It is the final arbiter in this regard, not the commission or the police chief. As such, it was inconsequential the police chief's decision to dismiss Musquiz was based on more than one incident. (See *Ng* v. *State Personnel Bd.* (1977) 68 Cal.App.3d 600, 605 [137 Cal.Rptr. 387].) The council did not abuse its authority.

## DISPOSITION

The decision of the trial court is affirmed.

Lillie, P. J., and Thompson, J., concurred.